HOUSTON & T. C. RY. CO. v. LAWRENCE.
(No. 7441.)

(Court of Civil Appeals of Texas. Galveston.
June 28, 1917. Rehearing Denied
Oct. 4, 1917.)

1. RAILROADS ⬗282(5) — INJURIES TO PER-
SONS—INFANTS—CONTRIBUTORY NEGLIGENCE
—CAPACITY TO UNDERSTAND DANGER.

In a suit for injuries to a child 13 years of
age invited to climb onto and ride on a moving
box car, evidence *held* to warrant a finding
that the child lacked capacity to understand the
danger, and that he was not guilty of contribu-
tory negligence.

2. RAILROADS ⬗282(4) — INJURIES TO PER-
SONS—NEGLIGENCE—EVIDENCE.

Where negligence charged is the permitting
of plaintiff's son to ride on a freight train by a
brakeman, evidence of efforts, at a time such
child was not present, to prevent children board-
ing defendant's trains was immaterial.

3. DAMAGES ⬗99 — INJURIES TO CHILD —
MEASURE OF PARENTS' DAMAGES.

To determine damages of a parent for in-
jury to a child, the expense of feeding and cloth-
ing is not to be deducted from the value of his
services, since the parent has to feed and clothe
the child anyway.

4. DAMAGES ⬗132(12)—INJURIES TO CHILD—
DAMAGES OF PARENT.

Verdict for $4,500 *held* not excessive dam-
ages to a parent for loss of the arm of a 13 year
old boy, where the suit was not brought until
the child was 21.

Appeal from District Court, Harris Coun-
ty ; J. D. Harvey, Judge.

Suit by Mrs. Ella Lawrence against the
Houston & Texas Central Railway Company.
Judgment for plaintiff and defendant ap-
peals. Affirmed.

Baker, Botts, Parker & Garwood and Mc-
Means, Garrison & Pollard, all of Houston,
for appellant. Presley K. Ewing, of Houston,
and Ewing Werlein, of New Orleans, La.,
for appellee.

GRAVES, J. This is one of those none too
frequently presented cases in which the mu-
tually exchanged courtesies between opposing
counsel, and their fairness with each other
and the court, enables us, in stating the case,
to appropriate at will from either brief such
recitations of fact as are deemed essential,
practically without change; that privilege
will accordingly be availed of:

Earl Lawrence, a boy of about 13 years of
age, while riding upon a train of freight
cars of appellant, attempted to ascend to the
top of a box car from a coal car in which he
then was, and in so doing, fell therefrom in
such a way that his left arm was run over
by the wheels, necessitating amputation near
the shoulder. His mother, the appellee, Ella
Lawrence, a widow, brought the suit to re-
cover of the appellant for the loss of his serv-
ices and earnings during his minority, lay-
ing her damages at $5,000. A trial before a
jury resulted in a verdict and judgment for
the appellee for $4,500, from which the ap-
pellant, after its amended motion for a new

trial had been overruled, has duly presented
this appeal.

The gravamen of Mrs. Lawrence's com-
plaint was that the injury to her child, he
being then, from immaturity, of insufficient
age and discretion to understand and appre-
ciate the attendant dangers, was proximately
caused to him on the particular occasion by
two separate acts of negligence of the defend-
ant, through its specified servant, one of the
switchmen; first, in negligently permitting
the boy to board the moving freight train,
with knowledge that he was about to do·
so, although he could easily, it was alleged,
by warning or sign of disapproval, have kept
the child off; and, second, in negligently in-
viting and permitting the boy, by beckoning
to him while he was riding in a coal car,
to climb on the adjacent box car, whereby,
attempting to do so, he fell and lost his arm.

Probably the most directly relevant portion
of her petition specifying the negligence
charged was the following:

"That plaintiff's said son and his companions,
on boarding said car on the occasion in question,
got into an empty coal car, and while they were
so riding there, one of defendant's said employés,
being a switchman, who was on a box car, beck-
oned to and invited plaintiff's said son and his
companions to go on said box car, which was
westward of said coal car; to do which they had
to climb up where the switchman was while
the train was in motion; that pursuant to said
invitation so given by said switchman, and be-
cause thereof, plaintiff's said son and his com-
panions undertook to go where said switchman
was. on top of said box car; that one of the
companions of plaintiff's said son succeeded in
doing so, but the attempt of plaintiff's said son
so to do, and while to that end he was climbing
on said box car, he slipped, lost his hold, and
fell between the cars of said train, when the
wheels thereof passed over his left arm, cutting
it off just below the shoulder joint; that at
the time of said injury to plaintiff's said son he
was a minor, of immature years, to wit, only
13 years of age, without intelligence or discre-
tion, and without experience sufficient to under-
stand and appreciate the danger of boarding and
riding said train, or the danger of undertaking
to go on said box car where said switchman was
in the manner he attempted to do; that it was
hazardous and dangerous and not reasonably
safe for one of the immature years of plaintiff's
said son to board and ride said train as he un-
dertook to do on the occasion in question, and
it was especially dangerous and hazardous for
one of his immature years to undertake to climb
onto said box car, as invited to do by said
switchman, and as he attempted to do on the
occasion in question."

Appellant's special answer was that the
boy was a trespasser upon its train, and was
guilty of contributory negligence.

The case was submitted to a jury on spe-
cial issues, and the jury found: (1) That one
of the defendant's employés, serving it as
switchman on the train in question, beckoned
to Earl Lawrence to come from the flat car on
which he was riding to the box car, while
the train was in motion; (2) and that such
going onto the box car was dangerous for a
boy of Earl's age and intelligence at that
time; (3) that Earl at that time was of in-

sufficient age and discretion to understand and appreciate the danger to him in going onto the box car under the attending circumstances; (4) that the act of such switchman in beckoning to him to come onto the box car was a failure to exercise such care to prevent danger to him as a person of ordinary prudence would have exercised toward him under like circumstances; (5) that the want of such care on the part of such switchman was a proximate cause of Earl's alleged injury; that is, a cause without which such injury would not have happened, and from which that injury or some like injury might reasonably have been anticipated as a natural and probable consequence; (6) that Earl, in attempting to go onto the box car in the manner in which he attempted to do so, exercised such care as might reasonably have been expected of, that is, that would ordinarily be exercised by, a boy of his age and intelligence at that time, under the same or similar circumstances; (7) that one of defendant's employés serving it as switchman on the alleged train saw Earl on the occasion in question, and realized that he was about to get aboard of such train; (8) that the boarding and riding on the cars of such train was dangerous for a boy of Earl's age and intelligence at that time; (9) that at that time Earl was of insufficient age and discretion to understand and appreciate the danger to him of boarding and riding on such train under the attending circumstances; (10) that such switchman, when he saw Earl about to board the train, failed to exercise such care to prevent him from boarding and riding on the train as a person of ordinary prudence would have exercised towards him under like circumstances; (11) that the want of such care on the part of such switchman was a proximate cause of Earl's alleged injury; and (12) that Earl, in boarding and riding on the train in question, was in the exercise of such care as might reasonably have been expected of, that is, as would ordinarily be exercised by, a boy of his age and intelligence at that time, under the same or similar circumstances.

Appellant attacks the judgment mainly upon a contention which may be thus epitomized: That the great weight and preponderance of the evidence established the fact to such a degree as to render any other conclusion wrong, that Earl Lawrence was of such age and intelligence as that he could and should have appreciated the danger of boarding the coal car and of attempting to climb from it to the box car, while the train was in motion, and that his proven acts in both instances, under the circumstances shown, were such as a person of ordinary prudence similarly situated would not have done, and constituted such negligence upon his part as would preclude a recovery by his mother, in the absence of a showing that the switchman who permitted him to board the coal car and invited him to climb therefrom to the box car, had authority so to do.

Such, we think, is the essence of the questions raised by the first four assignments, though predicated upon different rulings of the court. The single proposition deducible is that, in legal effect, the evidence was not sufficient to show that Earl Lawrence was of insufficient age and discretion to understand and appreciate, or to use appellant's exact language, that he did not have the capacity to appreciate, the dangers from which his injury resulted, wherefore the court should have given appellant's requested peremptory instruction, or else should have set the verdict aside. The litigants both concede, not only that the issue as to whether a child of Earl Lawrence's age at the time of this injury has sufficient discretion, or capacity, to understand and appreciate the danger, is ordinarily a question of fact for the jury, but that here the burden of proving that fact was upon appellee; indeed, she predicated her right of recovery solely upon the claim that her son, Earl, was without the necessary capacity, understanding, and appreciation of the danger, and acknowledged the burden of establishing it as necessary to make out her case. These deductions reduce the issue as to mental capacity thus joined upon this appeal to practically one clear-cut question, and its determination is, we think, decisive of every question presented, except that as to excessiveness of the verdict.

[1] After a most painstaking examination of the testimony, we are unable to agree to the contentions of appellant, but think the evidence amply sufficient to support the jury's findings as to the lack of capacity of appellee's son. Deeming it unnecessary, no attempt will be made to catalogue in detail the body of evidence upon which the jury based its findings, but a few of the more salient if not the controlling facts may be mentioned. While it seems to us there was little, if any, materiality in the matters relating to how, or under what circumstances, Earl got upon the coal car, the fact nevertheless remains that he was there, and what is of vastly more if not sole importance here is, that he attempted, under the conditions next recited, to go therefrom onto the box car.

In reference to his attempt to pass from the one car to the other, the following facts were established with so little uncertainty or contradiction as to be practically without dispute: That the boy at the time of his injury was one month past 13, and small for his age; that appellant's negro switchman was sitting on the box car immediately in front of the coal car into which Earl, with one or two other boys, and with the switchman's full knowledge, had gotten and was riding; that this switchman had known these boys before; was friendly with them; and when he saw them in the coal car, he beckoned to them with his hand to come on up from there to the box car where he was,

while the train was in motion; that when he did that, Earl, following one of the companion boys, started across, but in making the effort, slipped and fell between the two cars and was injured; at this point he himself testified in substance: That if the switchman had halloaed at him and his companions, told them not to get on, or anything of that kind, or if he had objected to their getting aboard, witness would not have gotten aboard the train; but the switchman did not make any objection to his getting aboard. That if the switchman had not beckoned to him and his companions to come onto the box car from the flat car, he would not have gone onto that box car or attempted to do so. That he had before then ridden on the cars, going over to the cotton mills, on the trains of the defendant, the same way, and on these occasions the switchman connected with the train, including the one who beckoned them to come onto the box car, had seen him do so without objection, and that had objection been made he would have stayed off. That when the switchman beckoned to them to come on the box car, he did so; "didn't think the switchman would call me into danger, and I saw the other boys go over there, and I thought I could go over all right. If I had known that it was dangerous for me to go onto that box car, I would not have gone." That the box car was five or six or seven feet higher than the coal car, somewhere along there. That the coal car and box car were coupled together, the former with sides about 24 inches high; could not say how far the cars were apart; and in getting from the coal car to the box car one would have to step on the outside of the coal car, and stand on the railing or board on the coal car, about two feet high, and step over; but did not remember how he did, only that he reached for the grabiron, the handhold, and the next thing he remembered he was being pulled out from under the train.

The trial occurred about 8 years after the accident; the jury had before them the injured boy; two of his companions on the coal car at the time of the injury, all of them grown men; his mother, with her detailed evidence as to what the boy was and could do before his injury; the man who pulled him from under the wheels and took him to the hospital; the claim agents of appellant, who took written sworn statements from the boys immediately following the occurrence, together with such statements; brakemen and others of its employés in charge of the train at the time; they were thus afforded a full opportunity, by the standards of ordinary intelligence, to gauge the reaches of this boy's ability and capacity to understand and appreciate the danger of what he undertook to do, in the circumstances under which he attempted it.

When they have thus said that he did not have such capacity, this court would not feel at liberty in the state of this record, and under our decisions, to say, as a matter of law, either that there was no evidence to support their finding, or that the evidence was conclusive to the contrary. Cook v. Houston Direct Navigation Co., 76 Tex. 353, 357, 358, 13 S. W. 475, 18 Am. St. Rep. 52; M., K. & T. Ry. Co. of Texas v. Rodgers, 89 Tex. 675, 680, 681, 36 S. W. 243; M. K. & T. Ry. Co. of Texas v. Tonahill, 16 Tex. Civ. App. 625, 627, 630, 41 S. W. 875, 877; Id., 54 S. W. 419, error refused; and Tex. & Pac. Ry. Co. v. Mother, 5 Tex. Civ. App. 87, 94, 24 S. W. 79.

This conclusion necessitates the overruling of the first four assignments.

[2] No prejudicial error is disclosed by the fifth, sixth, and seventh assignments, for the reason that the appellee based her right to recover solely upon the negligent acts of the particular switchman on the specified occasion in permitting her child to go into such dangers, instead of preventing him from doing so, and testimony, in effect, that about the time Earl was hurt, on occasions at which he was not present, and as to which it is not claimed he had knowledge, the defendant had taken steps, through its employés, to prevent children boarding or riding on its trains as Earl was doing at the time of his injury, was, we think, wholly immaterial. The three named assignments are therefore overruled without further discussion.

[3] The eighth and last assignment of error complains that the verdict is excessive for want of evidence to show that Earl Lawrence would have earned until he reached the age of 21 the sum of $4,500, only a single ground apparently being assigned, that is, that the verdict was for the full amount of liability under the most favorable view of the evidence, without taking into consideration the expense of educating, supporting, and maintaining the boy.

If, under a fair construction, this assignment only raises the one objection to the amount of the verdict that the jury did not take into consideration the expense of educating, feeding, and clothing the boy, and we are much inclined to think that its effect, the assignment would raise no legal issue, as applied to the facts of this case, because the damages recoverable by a parent for injuries to a minor child, not resulting in death, are not restricted to the value of the services of the child during his minority, less the expense of feeding and clothing; this is so for the reason that the expenses of feeding, clothing, and educating the minor during his minority devolve upon the parent anyway, and such expenses in the present case were not shown to have been diminished, but rather increased, by the injury. T. & P. Ry. Co. v. Morin, 66 Tex. 133, 18 S. W. 345.

[4] But even if the assignment does properly raise the question of the sufficiency of the

evidence to sustain the amount found by the jury, we think it equally not well taken, because the award rested upon ample support in the testimony; indeed, the assignment itself is almost, if not quite, an admission that the evidence, when considered from the most favorable viewpoint for appellee, and without deduction for the expenses above discussed, justified a verdict up to the amount awarded. At any rate, we hold that it did, and hence this court would not be justified in revising the judgment on that account, either in whole or in part.

Finding no reversible error in the record, all assignments are overruled, and the trial court's judgment is affirmed.

Affirmed.