## CITY OF FORT WORTH et al. v. LEE.
### No. 14633.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 22, 1944.

Rehearing Denied Oct. 20, 1944.

R. E. Rouer and Heard L. Floore, both of Fort Worth, for appellant City of Fort Worth.

John A. Kerr, Jr., of La Grange, and F. B. Walker and Luther Hudson, both of Fort Worth, for appellant Joseph B. Fleming, trustee of Chicago, R. I. & G. Ry. Co.

Todd, Crowley & Gambill, of Fort Worth, for appellant Texas Employers Ins. Ass'n.

W. H. Slay and Robert Harrison, both of Fort Worth, for appellee.

McDONALD, Chief Justice.

Victor Atkins, a fourteen year old boy, fell into a railroad cut about twenty feet deep while riding his bicycle. His mother, the appellee, maintains this suit to recover damages, both individually and as guardian of the minor. The City of Fort Worth, and the trustee in bankruptcy of the Chicago, Rock Island and Gulf Railway Company, are the defendants. Texas Employers' Insurance Association, by a plea in intervention, sues by reason of having paid out certain moneys as benefits under the Workmen's Compensation Act.

The jury, in answer to special issues, found both defendants guilty of negligence, and absolved Victor Atkins from contributory negligence. Judgment was rendered against both defendants, jointly and severally, $3600 being awarded to plaintiff individually, and $20,000 being awarded to her as guardian of the minor. Texas Employers' Insurance Association was denied the major part of the relief it sought. Both defendants and the intervener have appealed.

A total of forty-eight points of error are presented by the appealing parties, and all parties have filed in the aggregate some three hundred seventy-five pages of briefs and written argument. An opinion of some length is required to discuss the issues raised.

Victor Atkins was employed as a delivery boy for a drug store situated in the northern part of the City of Fort Worth. On the night of January 5, 1943, at about nine or ten o'clock, he was engaged in making a delivery in the area known as Fostepco Heights. At the point where Victor was injured the railroad runs in a northerly and southerly direction. North Twenty-ninth and North Thirtieth Streets run east and west. There is a railroad crossing on Twenty-ninth Street, but there is no crossing on Thirtieth Street. The area in question lies east of the railroad. Victor was riding west on Thirtieth Street, but thought that he was on Twenty-ninth Street, as he approached the railroad. Thirtieth Street terminates at the east line of the railroad right of way, and intersects North Pecan Street, which runs north from this intersection. Both streets are graveled. The graveled or improved portion of the road-

way thus runs west along Thirtieth Street to a point near the railroad right of way, then turns north on Pecan Street. The railroad tracks near this intersection lie in a cut about twenty feet deep. From the western edge of the graveled or improved portion of the roadway there is a distance of about twenty-five feet to the east line of the railroad right of way, and there is a further distance of about thirty feet from the east line of the railroad right of way to the edge of the cut. As Victor rode west along Thirtieth Street, he failed to turn with the roadway north onto Pecan Street, but instead, thinking he was on Twenty-ninth Street which crossed the railroad, continued westward and fell into the railroad cut, suffering serious bodily injuries.

Plaintiff's theory of liability is that the location and appearance of the intersection of East Thirtieth and Pecan Streets were such as to be deceptive, and to cause Victor to believe that a crossing existed there, and that it was negligence on the part of both defendants to fail to provide barriers or warnings at or near the end of Thirtieth Street. The jury found both defendants guilty of negligence in such respects.

By written stipulation filed in the case the parties agreed: (1) The railroad acquired the right of way in fee in 1893, and during that and the following year constructed the railroad and excavated the cut. (2) The cut has remained in substantially the same condition since its completion prior to June 1, 1894. (3) The cut was made in accordance with sound engineering practice and was necessary in order that the track should be laid at such a grade that trains could be operated thereon. (4) Fostepco Heights, including the area here involved, was dedicated as an addition in 1907, and the written instrument of dedication filed in the Deed Records of Tarrant County specifically dedicates nothing west of the east boundary line of the railroad right of way, and specifically dedicates no street or thoroughfare across the railroad tracks, and specifically sets out that no street is dedicated across the right of way nor on the west side of the tracks. (5) Prior to such dedication there was no street, road or other public way at substantially the present locations of Thirtieth Street and Pecan Street. Thirtieth and Pecan Streets were laid out and graded between the years 1907 and 1912. (6) At the time the railroad was laid out and the

cut excavated there was no road, street, or public way in the vicinity of what is now the intersection of Thirtieth and Pecan Streets, said adjoining property being vacant prairie or pasture land. (7) Neither Thirtieth nor Pecan Street has ever crossed the railroad right of way, nor is there any character of street or highway crossing at such point, nor any path across the tracks. (8) The accident to Victor Atkins occurred at a point where Thirtieth Street approaches but does not cross the railroad right of way. (9) Fostepco Heights, including the area embraced by Thirtieth and Pecan Streets, was duly and legally annexed to the City of Fort Worth in 1922.

█ Under its first three points of error the City urges that there was neither pleading nor proof that the City had notice of any cut, excavation, or hazardous condition on the property of the railroad such as would impose upon the City the duty of maintaining a barrier or warning. In City of Galveston v. Smith, 80 Tex. 69, 15 S.W. 589, 590, the rule is stated as follows:

"The basis of the action against a municipal corporation is negligence. Notice to the corporation of the defect which caused the injury, or facts from which notice thereof may be reasonably inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it, is essential to liability."

█ It was stipulated that the streets in question were graded and laid out between the years 1907 and 1912, that the railroad cut had remained in substantially the same condition since 1894, and that the area was annexed to the City in 1922. The stipulation would satisfy any lack of pleading of such facts as were agreed to in the stipulation. Miller v. Davis, 136 Tex. 299, 150 S.W.2d 973, 136 A.L.R. 177. The circumstances shown in the stipulation would imply constructive notice to the City as a matter of law. This was no temporary condition, like a hole in the street. It was a condition that had existed during the entire twenty-one years that the area had been within the city limits before the happening of accident in question.

█ The fourth point of error presented by the City complains of the following explanatory charge given to the jury:

"The Jury is instructed that Joseph B. Fleming, Trustee for Chicago, Rock Island

& Gulf Ry. Co. had no authority whatsoever over the roads and streets in the City of Fort Worth, and such roads and streets are under the exclusive control of the municipal authorities, and Joseph B. Fleming, Trustee, and the railway company for which he was Trustee, had no control or authority over the establishment, location and grade of the streets within the City of Fort Worth."

Whatever may have been the rule applicable to such a charge before the adoption of our present rules of civil procedure, we believe that the charge was authorized by Rule 277, Texas Rules of Civil Procedure, which provides that the court shall submit such explanatory instructions and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on the special issues, and that in such instance the charge shall not be subject to the objection that it is a general charge. The only decisions cited by the City are those in which trial was had before the adoption of the present rules. The law of the charge, as applied to the facts of this case, appears to be correct. This case does not involve a crossing, where both the City and the railroad might owe duties with respect to so much of the street as lay within the crossing.

Under appropriate points of error it is questioned whether there is any evidence of liability on the part of either defendant, whether either defendant is entitled to judgment over and against the other defendant, and whether the evidence shows contributory negligence as matter of law on the part of Victor Atkins.

After much thought and consideration, we have concluded that the record shows no liability on the part of the railroad, and that the evidence raised jury issues as to the negligence of the City and the contributory negligence of Victor Atkins.

The railroad built its line and excavated the cut many years before the streets in question were laid out. The railroad took no part in the location of the streets, nor in the improvement or maintenance of them. Its cut, according to the stipulation of the parties, was in accordance with good engineering practice and was necessary in order that the track could be laid at such a grade that trains could be operated thereon. It was clearly the location of the streets, and not the presence of the railroad cut, that lent a deceptive appearance to the situation. With or without the presence of the cut, the same facts would have existed which caused Victor Atkins to believe that the roadway on which he was traveling continued westward, instead of turning north on Pecan Street. Had the railroad cut been a river, or other natural object, he probably would have driven into it.

Beginning at page 810, Volume 25, of American Jurisprudence, will be found a lengthy discussion, and citations of many authorities, touching upon the duties and liabilities of those who own land adjacent to highways. At page 811 it is said:

"The general rule is that one who creates or maintains, on premises adjacent to a highway, a condition of such character that danger of injury therefrom to persons lawfully using the highway may or should, in the exercise of ordinary care, be foreseen or apprehended, is under the duty of exercising reasonable care, by means of guards, barriers, or otherwise, to prevent such injury. * * *"

The annotation in 14 A.L.R. page 1397 et seq., styled "Liability of Adjoining Property Owner for Injury to one Deviating from Highway or Frequented Path," refers to many decisions, and states the general rule in somewhat the same language as is quoted above.

■ Here the railroad was making a lawful use of its property in excavating the cut, and made the cut in accordance with good engineering practice and for a necessary purpose. The railroad might have foreseen that the pasture nearby would at some future time become part of a city, but was not required to foresee that streets would be laid out in such a manner as to render them unsafe for travel. There was neither negligence nor other wrongful act done by the railroad in making the excavation. If the City chose to maintain a street in a dangerous location, the railroad could not prevent it. If a duty rested upon anyone to protect travelers from dangers resulting from the manner in which the street was laid out or maintained, it was not upon the railroad.

The City cites cases in which judgment was rendered over and against some person other than the city who created a dangerous condition in a street, or nearby. In all of them the dangerous condition was created after the street was laid out and in use as such.

■ Liability against the railroad is suggested under Article 6402, of the Revised

Statutes, which provides that each railroad shall be liable to the owner of stock killed or injured on the railway, but that if such company shall fence its road it shall be liable only for want of ordinary care. We do not see that this statute is applicable to the present case. It imposes liability upon the railroad under certain conditions for stock killed or injured, but relieves the railroad of absolute liability if it fences its road, and substitutes therefor liability resulting from want of ordinary care. The statute does not, as do the statutes in some states, require the railroad to fence its road, but simply lessens the liability imposed by the statute if the road is fenced. The cases cited are not in point because of the differences in our statute from those involved in the cases cited.

■ The City also mentions Article 6320, requiring railroads to keep crossings in repair. No crossing is involved in this case. The fact that Victor Atkins thought he was at a crossing could not operate to impose upon the railroad the duty of maintaining a crossing that did not in fact exist. The cases involving crossings are therefore not in point.

Other cases are cited by the City, involving situations where the railroad rebuilt a crossing, or a section of a street or highway. Those cases are not in point here.

■ Chicago, R. I. & G. R. Co. v. Tarrant County Water Control & Improvement District No. 1, 123 Tex. 432, 73 S.W.2d 55, is cited as authority for the contention that the railroad was bound to anticipate the location of streets along and near its cut, and consequently became bound to guard its excavation when such streets were laid out. The cited case is a condemnation proceeding. The question before the court was the measure of damages to be awarded the railroad whose land was being condemned. The problem before the court was so different from the problem before us that general remarks which might be found in the opinion are not helpful in deciding the present case. Granted that the railroad should have anticipated that the rural area would eventually become a part of a city, still we find nothing in the facts before us which would impose upon the railroad a duty of guarding against the acts of the public authorities in laying out and maintaining the streets in such manner that travelers would be caused to believe that a railroad crossing existed where there was none. Such a rule of liability would require the railroad to inspect and examine every street and roadway in the neighborhood of its tracks in order to determine whether any such condition existed in any of them.

In some of the cases will be found remarks indicating that liability rests upon the owner of nearby land if he either creates or maintains an excavation so near a highway as to be dangerous to travelers on the highway. But it appears, in the cases which we have examined, that the adjacent owner made the excavation in each of the cases after the highway had come into existence. While we would not undertake to say that in no case could liability be imposed upon the adjacent owner for not guarding an excavation or dangerous condition which predated the highway or street, we do not believe that the facts of the present case were sufficient to raise an issue of negligence on the part of the railroad. The railroad's motion for instructed verdict should have been granted.

The views we have expressed seem to coincide with the pronouncements found in Restatement of the Law of Torts, Vol. 2, Sec. 368, according to which liability appears to be limited to those who create a dangerous condition near an existing highway. In Comment (b), under Sec. 368, it is said:

"b. When highway built near excavation. If a highway is established in close contiguity to an excavation or other dangerous condition upon the possessor's land, whether constructed by him or otherwise created, the duty to guard against such dangerous condition is upon those who are charged with the duty of maintaining the highway in a reasonably safe condition for travel and not upon the possessor of land upon which the dangerous condition is situate."

The City attacks this pronouncement as being without authority in the decisions to support it, but we nevertheless think that it states a correct rule. The City also refers to the pronouncements contained in Sec. 369 of the same work, but that section appears to cover only the liability of the possessor of land to small children.

The City argues vigorously that it was under no duty to guard against a dangerous condition that existed on the land of another, off the highway. The general rule

838

of liability of a city in such cases appears to be as stated in 39 Tex.Jur., p. 691:

"The duty of a municipality with respect to its streets is not confined absolutely to keeping them, or the traveled or improved portion thereof, in proper condition. The city may be held liable for injuries caused by defects or obstructions which are outside of the traveled portion of the way if their proximity to the improved part makes it not improbable that they will result in injury to persons using the street or the traveled or improved portion thereof in the ordinary manner and while exercising due care."

At page 694 it is said:

"It is the duty of a municipality to erect barriers or railings along a street at places where they are necessary to make the way safe for travelers who exercise ordinary care—or, as otherwise stated, where there is a dangerous place which is in such close proximity to the street as to render the way unsafe for purposes of travel. This obligation arises out of the duty of the municipality to maintain its streets and sidewalks in a safe condition for persons rightfully using the same; and it exists regardless of whether the dangerous place is on private or municipal property."

The duty of the City with respect to the streets in the annexed area, at least after a reasonable time, was the same as the duty owed with respect to other streets in the city. 25 Am.Jur., Highways, Sec. 397, p. 696.

■ The difficulty lies not so much in stating the general rule as in applying it to the facts of a given case. And in so doing, in the present case, we are confronted with the jury findings of negligence, and with the usual presumptions favoring the verdict. If reasonable minds can differ, we must uphold the verdict.

The City argues that Victor Atkins was not injured in an excavation located in close proximity to the street, and that the accident was of such an unusual nature as that the City was not required to foresee that it might happen, citing City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927. The opinion in the cited case, which was expressly approved by the Supreme Court, contains an excellent discussion of the duty of a municipality to guard against a dangerous condition near a street, but goes off on a point, it seems to us, which is not in the present case. In that case the vehicle in question ran off into a ravine when it became unmanageable by reason of a defect in the steering gear. The holding is that the City was not required to foresee such a circumstance and guard against such a possibility. In the present case the theory of liability is that the situation was such as to cause the traveler to believe that the street continued westward, when in fact there existed a dangerous excavation only twenty-five feet beyond the western terminus of the street. The photographs in evidence are alone enough, it seems to us, to reveal a condition that required submission of the negligence issue to the jury. Plaintiff relies on the decision in City of Beaumont v. Kane, Tex.Civ.App., 33 S.W.2d 234, writ of error dismissed, and we think that the decision, and the authorities there followed, support our holding

■ It is urgently contended that the evidence is sufficient as a matter of law to show contributory negligence on the part of Victor Atkins. . This contention has given us considerable concern. The weather on the night in question was very cold. Victor had no headlight on his bicycle. He had a flashlight in his pocket, but was not using it. The edge of the improved portion of the roadway was marked by a berm, or slight hump, some six or seven inches in height. As has been said, the roadway curved at the intersection and turned north on Pecan Street. Instead of turning, Victor continued westward until he fell into the cut. In so doing he rode his bicycle across the berm, and across some fifty-five feet of unimproved, rocky, and rather rough ground until he fell into the cut. The ground over which he rode, after leaving the roadway, declined four feet in the first forty feet, and three and one-half feet in the next fifteen feet. It was native soil, was rough, and had loose rocks on it. Victor testified that he could see the lights along an east-west street to the west of the railroad, which appeared to be a continuation of Thirtieth Street. These lights were seventy-two feet to the south of a comparable line of Thirtieth Street. Theretofore Victor had been accustomed to traveling on Twenty-ninth Street, one block to the south, in order to cross the railroad. Victor was found in the middle of the railroad tracks, at a point twenty-eight feet west of the point where he went over the cliff, and a total of eighty-three feet west of the traveled portion of Thirtieth Street. The

vertical distance from the top of the embankment to the bottom was eighteen feet. Victor said that he thought he was on Twenty-ninth Street until he drove off the bluff. It is quite difficult for us to see how any person in the exercise of ordinary care for his own safety could have ridden on a bicycle across fifty-five feet of rough ground without realizing he had left the street, but our courts have gone very far in requiring that questions of contributory negligence be submitted to the jury. For a discussion of the law and citations of many controlling authorities, see our opinion in Texas & N. O. R. Co. v. Blake et al., Tex.Civ.App., 175 S.W.2d 683, writ refused. Under those authorities we do not feel justified in holding that an instructed verdict should have been ordered on this ground.

 The City complains of the admission of the testimony of several witnesses concerning the impression the witness would get when traveling west on Thirtieth Street as to whether the street crossed the railroad, the impression a stranger would get concerning the same matter, and the impression Victor Atkins would get concerning the matter. Vigorous and repeated objections were made to this testimony. The opinion testimony of these non-expert witnesses was inadmissible. It was permissible for them to tell what they saw, but not what impressions a stranger, or Victor Atkins, would get upon viewing the scene. The testimony invaded the province of the jury. Appellee seeks to justify the admission of the testimony under the holding in City of Beaumont v. Kane, Tex.Civ.App., 33 S.W.2d 234, writ of error dismissed. We cannot accept that decision as authority for admitting the testimony complained of in this case.

"The general rule is that the testimony of a witness must be limited to the facts of which he has personal knowledge, and that he must not give his individual opinion or conclusion thereon. Whenever a question is to be determined by common experience or by inference from particular facts, the determination is to be made, or the inference drawn, by the court or jury, as the case may be, and not by the witnesses. In other words, when all the facts upon which opinion is founded can be ascertained and made intelligent to the court or jury, and there is no reason why the trier of facts cannot form the opinion as well as the witness after hearing the facts, opinion is not competent evidence." 19 Tex.Jur., p. 13.

"* * * It follows that, insofar as non-expert witnesses are concerned, their opinions will be rejected in all cases wherein the necessary facts of the case can be communicated to the jurors with such clarity as to warrant the assumption that, upon hearing them, the jurors will be in as good a position as the witnesses to appreciate their full significance and to draw the proper conclusions. * * *" 19 Tex.Jur., p. 89.

"* * * It seems that as a general proposition the courts of Texas will receive such testimony only when the facts are so numerous, complicated or evanescent that they cannot otherwise be fully communicated to the minds of the jurors in such manner as to impart to them the knowledge possessed by the witnesses. * * *" 19 Tex.Jur., p. 93.

Here the witnesses described in detail the appearance of the premises. Several maps or plats were introduced which showed in precise detail the location of the streets and the railroad cut, and the exact distances involved. Photographs of the area, taken from several viewpoints, were introduced. The witnesses could testify as to what they had seen, but there was no justification under the rules above stated for allowing the nonexpert witnesses to state their respective opinions as to what impressions some stranger would get who might be traveling along the street. That question was for the jury to determine, from the facts shown in evidence. A reversal is required under these points of error.

Other points of error complain of a remark of the trial judge made in the presence of the jury, and of argument of plaintiff's counsel to the jury. Since these may not occur upon another trial, we do not pass upon them.

 The jury was asked whether Victor "operated his bicycle at a rate of speed which was negligence under the circumstances," and answered in the negative. The City assigns as error the refusal of the court to submit questions inquiring whether Victor operated his bicycle at such a rate of speed that he could not stop it within the distance intervening between his bicycle and the point where he could see before him, whether the operation at such

rate of speed was negligence, and whether such negligence was a proximate cause of the injuries. Victor testified that he did not see the cut and did not know of its presence until he felt himself flying through the air. We hardly see how the requested issue is applicable to the facts of the case.

■ The City assigns as error the refusal of the court to admit in evidence a certain ordinance of the City of Fort Worth which requires bicycles to carry on the front an amber reflector or an electric headlight of certain dimensions. It is to be noted that the ordinance requires either a reflector or a headlight. Having either on the bicycle would satisfy the ordinance. Victor testified that the bicycle carried reflectors on the front and on the rear. It is obvious from the alternative nature of the ordinance that its aim was to enable other persons to see the bicycle, and not to provide the bicycle rider with a light which would enable him to see in front of him, since the reflector would not serve the latter purpose. Failure to have the headlight could not have been negligence per se, as being in violation of the ordinance, and failure to have a reflector could not have been a proximate cause of the accident. We overrule the assignment.

■ The City complains of the refusal of the court to submit an issue inquiring whether Victor, "at the time of and just prior to the accident, kept such a lookout as a person of ordinary care and prudence would have kept under the same or similar circumstances." The court submitted two issues on lookout. One inquired whether Victor "failed to keep a proper lookout ahead for his own safety as he approached the intersection of Thirtieth and Pecan." The other inquired whether he "failed to keep a proper lookout on the street on the occasion in question."

The contention of the City, which we think is sound, is that the issues submitted by the court inquired only as to the lookout which Victor kept while he was still traveling within the street, and as he was approaching the intersection, and did not inquire as to the lookout he kept after he left the roadway. The distinction is important, and perhaps of controlling importance, under the particular facts of this case. Victor traveled across fifty-five feet of rough ground after he left the roadway. It is a matter of common knowledge that a boy can stop a bicycle within a few feet. The

character of lookout maintained by Victor after he left the street was perhaps of more actual importance than the character of lookout maintained while he was still in the street. We must presume that the jury confined their answers to the questions included in the issues. It seems to us that the manner of submission employed by the court fell short of the defense pleaded by the City and supported by at least some of the evidence. We sustain the point of error.

■ The court inquired whether Victor "operated his bicycle at a rate of speed which was negligence under the circumstances." The City complains of the refusal of the court to submit an issue inquiring whether Victor "rode his bicycle at an excessive rate of speed just at and immediately prior to the accident in question under all the attendant facts and circumstances."

We do not consider the distinction between the submitted and the requested issues as to speed as marked as those relating to lookout, because in the latter the submitted issues expressly limited the inquiry to the lookout maintained while still in the street, while in the former there was not such an express limitation. The City contends that the issue submitted on speed is not confined as to area or time. We perhaps would not reverse the judgment if this were the only error found, but in view of another trial we recommend the issue requested by the City as being more applicable to the precise facts of the case.

■ The City complains of the refusal of the court to submit an issue inquiring whether Victor "failed to have his bicycle equipped with an electric headlight with a lens not less than two and one-half inches in diameter on the front thereof." Plaintiff argues that the City had no pleadings to support such an issue, in that the defense pleaded by the City with respect to the lack of a headlight was predicated upon the theory that the headlight was required by city ordinance, and was not predicated upon the theory that the lack of a headlight amounted to common law negligence.

While the answer of the City charges violation of the ordinance in failing to have a headlight, it seems to us that its allegations were also sufficient to charge common law negligence in failing to have the light. It also seems to us that the jury could reasonably have believed that it was

negligence not to have a headlight on the bicycle, and that the lack of a headlight could have been a proximate cause of the accident. If Victor had had any sort of headlight he might have observed that he had left the street in time to have stopped before falling into the cut. We sustain the point of error.

 Negligence on the part of the City was found in answer to four issues. Issue No. One inquired whether the City "maintained a public street or thoroughfare at the point where East Thirtieth runs into and connects with the right of way of defendant Chicago, Rock Island and Gulf Railway Company and North Pecan Street." Issue No. Two inquired whether the maintenance of a public street or thoroughfare at such point was negligence. The City complains, among other things, that the issue does not seek a determination of an ultimate issue, that the issue was predicated upon the theory that the City was guilty of certain separate, distinct and specific acts of negligence, and that such issues were grouped or lumped into this one issue. It appears to us that Issue No. One and its correlated issues presented a question of general negligence, and were subject to objection as such.

 The Fourth Issue and its correlated issues inquired whether the City was negligent in failing to have an arrow or written sign visible to travelers westward-bound on East Thirtieth Street pointing the way out. Objection was made that the issue placed a burden upon the City not required by law, that the issue assumed that there was a duty upon the City to place an arrow or written sign at the point designated, that it was on the weight of the evidence, and that if there was any such duty on the City it was purely governmental. We do not consider that the issue is subject to the objections which were made to it. The Seventh and correlated issues inquired whether the City was negligent in failing to maintain a street light on or near the intersection. We doubt seriously if liability could be maintained on this ground. Attention of the parties and the trial court is called to the authorities referred to in 25 Am.Jur., Highways, sec. 415, and 40 C.J.S., Highways, § 261.

 The Tenth and correlated issues inquired whether the City was negligent in failing to "erect and maintain a fence, railing or barrier in the right of way at the turning of the traveled way at the end of East Thirtieth Street." The objections to the issues were that they sought to impose a duty upon the City not required by law, that the determination of where fences, railings or barriers should be located should be made by the legislative branch of the municipal government, and that such issues were upon the weight of the evidence. We do not consider that the issues were subject to the objections made.

We do not undertake to say whether any of the above issues might be subject to other objections.

The City complains of the action of the trial court in overruling certain special exceptions. The special exceptions, as we construe them, raise somewhat the same questions that we have already considered in passing upon the facts, and were, we think, properly overruled.

The City's thirty-first point of error becomes immaterial in view of our judgment reversing and remanding the cause for another trial.

 The City charges that the verdict is grossly excessive. The verdict is large, but would not, in our opinion, warrant a reversal or require a remittitur. Victor's injuries were of a most serious nature. He lay unconscious for several days. Both arms were broken. His skull was fractured. Several weeks after the accident he had to undergo a second operation on his right elbow. He undoubtedly suffered much pain. There was evidence that he was still suffering from his injuries at the time of trial, and that the school physician, shortly before the trial, directed him to wait until the following semester to reenter school. Any effort on our part to assess the damages at a different figure would be simply a substitution of our judgment for that of the jury. In a proper case we will declare the verdict excessive, but we do not feel justified in so doing in this case.

 The City complains of the refusal of the court to submit issues inquiring whether Victor was negligent in failing to confine riding his bicycle to the traveled portion of the street. It seems to us that this issue sought in effect only a general finding of contributory negligence, and was not required to be given.

The court submitted an issue inquiring whether Victor, "after he rode his bicycle off of the traveled portion of the street, was negligent, as that term has been de-

fined to you, in failing to stop his bicycle just prior to the accident in question." The City complains of the refusal of the court to submit issues inquiring whether "in the exercise of ordinary care for his own safety Victor Edwin Glen Atkins should have discovered that he was off of the traveled portion of the street in time to have stopped his bicycle before going into the excavation," and whether the failure to make such discovery was negligence. Appellee argues that the issue requested is substantially the same as the issue submitted.

On the one hand we are confronted with the rule as stated in Walgreen Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625, 631:

"It is the settled law that under our present special issue statutes the defendant has the same right to have his defensive issues submitted to the jury that the plaintiff has to have his offensive issues submitted."

On the other hand we are bound by Rule 279, which provides:

" * * * Where the court has fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue. * * *"

Naturally there will arise cases where it is not easy to determine which of the two rules is applicable. As we have already indicated, a vital element of the City's defense was Victor's conduct after he left the traveled roadway. It seems to us that the issue requested by the City more pointedly focused attention upon his failure to discover that he had left the roadway, than did the issue submitted by the court. The failure to discover his position went more to the heart of the question of his negligence than did the mere failure to stop. The failure to discover his position was the more immediate result of failure to exercise care, if such there was. Had he discovered his position in time, stopping might not have been the only measure left open to him. He might have turned back onto the road. We think that it was error not to submit the requested issue.

The City contends that the court should have submitted an issue requested by it inquiring whether "the sole proximate cause of the accident and the resultant injuries to Victor Edwin Glen Atkins was his own failure to exercise ordinary care on the occasion in question." It seems to

us that the requested issue presented an inquiry of a general nature, which was covered substantially by the inquiries relating to specific acts of contributory negligence. The two cases cited by the City, holding that issues inquiring as to sole proximate cause should have been given, involved the conduct of third persons, and not of parties to the litigation. Dallas Railway & Terminal Co. v. Stewart, Tex. Civ.App., 128 S.W.2d 443; City of Pampa v. Todd, Tex.Civ.App., 11 S.W.2d 247. The other case cited in support of the point is an old case, involving a general charge, and is not applicable to the question before us.

Appellee first brought the suit as guardian for the minor, but after the close of the evidence, and before submission of the case to the jury, filed an intervention seeking a recovery in her own behalf, for loss to her of the minor's services. The City does not assert error in this court for allowing the intervention to be filed at such late date. Its only complaint with respect thereto concerns the manner of submitting the question of damages suffered by appellee individually. In an instruction accompanying this damage issue the court charged the jury that:

"In arriving at an answer to this issue, you may consider only loss of net earnings (if any, if you find that Victor Atkins would have made any net earnings) as he would in all probability have earned prior to his twenty-first birthday."

The City objected on the ground that the charge (1) failed to take into consideration sickness and illness of Victor Atkins, (2) failed to take account of lost time, (3) failed to take into account elements of expense in connection with the education and support of the child, and allowed for no deductions for such items, and (4) failed to allow deductions for other losses that would naturally occur.

We find the following statement in 39 Am.Jur., Parent and Child, Sec. 80, p. 725:

"It has been suggested that in estimating the value of the services lost to the parent as a result of the injury, the cost of supporting the child during infancy should be deducted, but the better rule would seem to be that no such deduction is permissible."

In 46 C.J., Parent and Child, § 131, p. 1311, it is said:

"The extent of the parent's damage for the loss of the child's services is the latter's

total earning capacity, without deducting the expense of his support and maintenance during minority."

That this is the rule in Texas is clearly established by the holdings in Texas & P. R. Co. v. Morin, 66 Tex. 133, 18 S.W. 345; Texas & P. R. Co. v. Brick, 83 Tex. 526, 18 S.W. 947, 29 Am.St.Rep. 675; Houston & T. C. R. Co. v. Lawrence, Tex.Civ.App., 197 S.W. 1020, writ of error refused; Russell et al. v. Adams et al., Tex.Civ.App., 18 S.W.2d 189. In these cases it is pointed out that the father is entitled to the son's services, but is liable for his support. The net loss, therefore, is the loss of earnings. See also the opinion of the Supreme Court in Lane v. Community Natural Gas Co., 134 Tex. 255, 134 S.W.2d 1058.

The City complains here of the instruction accompanying the issue on damages to be recovered by appellee as guardian for the minor. After carefully examining the objections raised, we have concluded that they are not supported by the exceptions made to the charge at the time it was given, but go considerably beyond such exceptions. We hold that the instruction is good as against the exceptions leveled against it in the trial court.

In view of another trial, it will be unnecessary for us to pass upon the contentions made by the Texas Employers' Insurance Association.

For the reasons indicated, the judgment of the trial court is reversed. Judgment is here rendered in favor of the railroad, as against all other parties to the suit. The cause is remanded to the trial court for another trial as to all parties other than the railroad.

Reversed, rendered in part, and remanded in part.