**ROOSTH & GENECOV PRODUCTION CO. v. WHITE et al.**

No. 6638.

Court of Civil Appeals of Texas. Texarkana.

Feb. 19, 1953.

Rehearing Denied April 9, 1953.

Gladney & Stephen, Henderson, J. Byron Saunders, Tyler, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellant.

Waldrop & Shaw, Chas. W. Shaw, Henderson, Leachman, Matthews & Gardere, Henry D. Akin, Dallas, Gordon R. Wellborn, Rex Houston, T. A. Bath, Dean W. Turner, Paul S. Colley, 3rd, Henderson, for appellees.

WILLIAMS, Justice.

In this suit for personal injuries against Roosth & Genecov Production Company and A. M. Sale, in which American Automobile Insurance Company intervened, Lee White, plaintiff below, was awarded judgment for damages of $30,000. Jury findings exonerated Sale from the only alleged act of negligence submitted or requested. Intervenor, the carrier of Workmen's Compensation Insurance on the employees of Carter and Jones, a partnership, was awarded a recovery of $12,661 out of above sum on its asserted and uncontested right of subrogation. The partnership who was protected by Workmen's Compensation Insurance is not a party to this action; all liability under this insurance contract having been discharged by intervenor. Roosth & Genecov Production Company, the sole appellant, will be referred to as appellant, and Carter and Jones as the partnership.

Appellant, the owner of an oil well derrick then situated on a leasehold in Smith County, entered into a written contract with defendant A. M. Sale under which the latter dismantled this derrick and re-erected it at a location designated by appellant on the Curbo lease in Rusk County. The same foundation blocks that had been used for the derrick on the Smith County lease, on instructions of appellant, were pulled up and re-used for the derrick on the Curbo lease. Appellant furnished the trucks to haul the blocks and the dismantled derrick to the new location. In dismantling and re-erecting the derrick, Sales acted as an independent contractor,

so found by the jury, which finding is not attacked.

Under a written contract with appellant, the partnership then proceeded to drill to the Woodbine Sand. Plaintiff, a member of the drilling crew and an employee of the partnership, while engaged in the discharge of his duties under his employment was caught in the fall of this derrick which caused him serious bodily injuries. On May 31, 1948, the seventh day of drilling operations, and when down around 3,500 feet as the crew was pulling pipe out of the hole the clutch which clasped the string of pipe "jumped out and the string of pipe slipped" and a fellow crewman applied the brakes with which derricks are usually equipped and caught the pipe to keep it from slipping back into the hole. Plaintiff heard a pop—"must have heard the clutch"; "some one hollow and as I ran saw the derrick careening and fall."

The stockholders in appellant company owned this Curbo leasehold. Under the admissions of A. S. Genecov, its president, the stockholders and appellant had entered into an oral contract under the terms of which appellant was given the "exclusive control, supervision and maintenance" of the premises with the "right and duty to have oil wells drilled thereon" and at the time of the injury, appellant was the "lawful occupant of the premises." Further, for the purpose of drilling the well in question appellant "was to furnish derrick, water, gas, pipes and other materials commonly furnished by the owner or occupant of premises to a drilling contractor"; and "had the right and it was its duty to employ independent contractors to drill wells and construct derricks on said premises."

Under the contract with the partnership appellant agreed to furnish the derrick, casing, pipe, slush pits, fuel, water and to pay for all cement and cement services in drilling the well. The partnership was to furnish the derrick floor, a complete rotary rig, all necessary tools, labor and repairs to drill to 3,800 feet or a sufficient depth to test the Woodbine sands and to complete the well. The partnership agreed to set surface casing and run the oil string, if same became necessary, and to test at in-

tervals the straightness of the hole. The partnership agreed to furnish rig and labor for making electrical surveys when well reached the total depth but appellant was to pay the charges for an electrical survey. The partnership was to receive from appellant upon completion and acceptance by the latter the sum of $1.25 per lineal foot so drilled.

The first twenty-seven points attack the submission of the special issues next herein detailed and the sufficiency of the evidence to support the jury's affirmative finding to each. Above points attack (1) the application of the "business invitee theory" to the facts and circumstances herein summarized and upon which judgment for plaintiff rests; and (2) the failure of the court to limit the inquiry in each issue to the alleged inherent defect or defects as alleged, in support of which plaintiff adduced his evidence.

Special Issue No. 1 inquired if appellant, its agents, servants and employees "knew, or by the use of ordinary care, should have known the condition of the completed derrick as it stood on the Curbo lease at the time it was furnished for use in plaintiff's employment"; No. 2,—if "such completed derrick, as it stood, was defective at the time it was furnished" by appellant "for use in plaintiff's employment"; No. 3—if "such completed derrick, as it stood, was defective to the extent that it was inherently dangerous at the time it was furnished for use in plaintiff's employment by" appellant; No. 6—if appellant, "its agents, servants and employees, failed to warn plaintiff of the defective condition, if any, of the completed derrick as it stood on the Curbo lease"; No. 9—if "by the exercise of ordinary care" appellant, "its agents, servants or employees should have discovered such defective condition, if any, of the completed derrick as it was furnished for use"; No. 10—if prior to the time the derrick struck and injured plaintiff, appellant, "its agents, servants and employees failed to properly inspect the derrick"; and No. 13—if appellant "had the right of control over the premises where the work in question was being performed" by plaintiff.

Special Issues Nos. 4 and 5 submitted in connection with Special Issue No. 2, inquired if the furnishing "of such defective derrick for use, if you have so found, was negligence; and if so, was it a proximate cause of the derrick striking and injuring" plaintiff. If the jury answered Special Issue No. 6 in the affirmative, they were required to answer Nos. 7 and 8 and found that the alleged failure to warn was negligence and a proximate cause of the injuries. If Special Issue No. 10 be answered in the affirmative, the jury was required to answer Nos. 11 and 12 and found that the alleged failure to inspect the derrick was negligence and a proximate cause of the injury.

The acts of negligence as alleged by plaintiff and the evidence introduced in support of same may be grouped as follows: (1) The foundation block under the southeast corner of the derrick was of irregular size and thickness; (2) the two right foundation blocks were on a deep sand fill that had not settled; (3) the derrick was old and rusty and had been exposed to the elements for many years; and (4) the bolts in the derrick were old and rusty.

■ It is without dispute that neither plaintiff, appellant, Sale nor the partnership had any actual knowledge of any alleged defect, visible or inherent, in the derrick or in the manner of its re-erection. It is further without controversy that both Sale and the partnership were independent contractors and that each was experienced and reliable in his respective field of operation. Plaintiff was certainly a business invitee upon the premises at the time.

■ If it be assumed that the evidence is sufficient to support one or more or all of above alleged acts of negligence, appellant takes the position as reannounced in Southern Oil Co. v. Church, 32 Tex.Civ. App. 325, 74 S.W. 797, 798, writ denied, and applied to a record substantially as here, that "There was no contract duty resting upon the Southern Oil Company [appellant here] to the appellee [plaintiff here]. The law would imply the duty resting upon the appellant not to intentionally

or willfully injure the appellee, or knowingly furnish him agencies to be used in his employment that are inherently dangerous." "The duty looking to the care of the plaintiff, under the facts stated, rested upon Hammil Bros. [partnership here], and for negligence which consisted merely in acts of omission or failure to perform ordinary care looking towards his safety the plaintiff should be limited to a recovery from them." Many decisions are cited in support of above doctrine. This holding cited in later Texas decisions with approval has never been expressly repudiated by our Texas courts unless the holding by our Supreme Court in Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 431, 20 A.L.R.2d 853, relied upon by plaintiff is applicable to this record and by implication repudiates Southern Oil Co. v. Church, supra. The court in Allbritton v. Sunray Oil Co., D.C., 88 F.Supp. 55, 57, cited by appellant, recognized the rule restated in the Church case and attempted to draw a distinction between practically similar records in the two cases in an affirmance of liability.

Being an intermediate court, the holding in Smith v. Henger, supra, is recognized as applicable here wherein it is stated, 226 S.W.2d at page 431, "A general contractor on a construction job, who is in control of the premises, is burdened with the duty to use due care to provide a safe place for workmen on the premises, including the employees of other contractors", citing numerous authorities.

Special Issue No. 13, hereinabove briefly set out inquired if appellant "had the right of control over the *premises*" (italics ours), "where the work in question was being performed." As we interpret points 24 to 27, both inclusive, appellant contends that the use of the term "premises" could cover the ground, the derrick, the machinery and everything there, and the issue should have been limited to whether or not appellant had control of the actual drilling of the well and the actual work being performed at the time. It is readily apparent from this record that appellant did not have any control over the employees of the partnership and was not directing the actual operations of the machinery then being used. The partnership as an independent contractor was charged with the performance of such operations. While the well was being drilled, the field superintendent and other officials of appellant visited the premises from time to time to see that the operations were being properly performed according to contract and to see if anything was needed that it was required to furnish under the contract. At the time of the accident, the Woodbine sand had been substantially reached and the well was in the process of being completed. At appellant's direction a Schlumburger test had been made, and the well "shot." A contractor employed by appellant had cemented the well. According to one witness, appellant after looking at the picture made in the Schlumburger test directed the partnership to go back in the hole and circulate the well. Under the authority of Smith v. Henger, supra, these points are overruled.

Various acts and conduct on the part of appellant and defendant Sales and various alleged defects in the derrick, in the foundation and the foundation blocks were specially pleaded and the volumes of evidence in this record dealt with the pro and con of these allegations. In this connection it was the claim of plaintiff under the evidence offered by him that two of the foundation blocks had been set on solid ground and two on sand or a fill; that the southeast corner block had been set on the fill and that when the brakes were applied this particular block shifted or kicked up and this caused the derrick to buckle, careen and topple. Evidence introduced further related to his allegations that second-hand blocks were used and that the block used at the southeast corner had "pump knots" on the bottom and that this prevented a solid foundation; that the block was irregular in thickness and varied from 6 to 11 inches in thickness and this caused the block to shift or tilt. And further, that the derrick was second-hand, old and rusty and the bolts in it were old, rusty and loose and such condition caused the derrick to give way; that appellant could have inspected but negligently failed to in-

spect this derrick and its construction, and upon an inspection could have discovered such conditions. There is some evidence that raises the question which block may have tilted or shifted. Evidence in rebuttal to plaintiff's claims was in effect that the derrick was not old or defective; that the bolts had been inspected by Sales and were in good shape; that it was a common practice to re-use derricks in drilling operations; that during the scarcity of cement in the late war it was the common practice to re-use foundation blocks; that a derrick out of plumb could and would be readily detected by the drilling crew; and that the base of foundation blocks, if irregular, would fit or sink into the ground.

It is to be observed that the jury issues hereinabove detailed each inquired about a "completed derrick as it stood at the time it was furnished" by appellant "for use in plaintiff's employment." Under various points, concisely stated, appellant asserts that each of above issues "was a general submission and entirely too general and failed to confine the jury to any particular defect or the defects specially alleged by plaintiff and on which he had tried his lawsuit." Rule 277, T.R.C.P., specifies, "In all jury cases the court * * * upon request of either party, shall submit the cause upon special issues raised by the written pleadings and the evidence in the case * * *." Rule 279, T.R.C.P., specifies that "When the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence".

In City of Ft. Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 961, 159 A.L.R. 125, issues submitted inquired if the city maintained a public street at the point of the accident; and if so, whether or not the maintenance of a public street at such point was negligence. In reviewing the action of the Court of Civil Appeals, 182 S.W.2d 831, 841, it is said: "The court of civil appeals [186 S.W.2d at page 961] held that the issues presented general negligence, in view of Mrs. Lee's allegations of specific negligence on the part of the city, and should not have been submitted.

We overrule Mrs. Lee's point of error complaining of that holding." See also Kress & Co. v. Jennings, Tex.Civ.App., 64 S.W.2d 1074, w/d. In City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 876, 14 A.L.R.2d 61, which was an action to condemn certain buildings as being fire hazards, in commenting upon the specific allegations pleaded as to the condition of passage ways, rooms, wiring, flues, exits and other alleged conditions of the buildings, our Supreme Court held "They are evidentiary in their character, being facts that tend to prove that the buildings are fire hazards, facts to be considered by the jury in answering the issues submitted." "The ultimate and controlling fact which the petitioner seeks to establish * * * is that the buildings in their construction, present condition and use are serious fire hazards." "In our opinion, the court submitted the controlling issues when it requested the jury to find as to each of the buildings whether it constitutes a serious fire hazard." We are unable to draw a logical distinction between a "completed derrick as it stood" and a building as it stood, alleged to be a fire hazard, and therefore overrule appellant on the points urged. We are not unmindful that the construction placed on Rule 279, supra, since its adoption emasculates the holding in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, and the host of decisions which have followed it. Apparently the adoption of Rule 279, supra, and decisions subsequent thereto strongly reflect a drift in this atomic age from the submission of a case on special issues to that of a general submission.

■ Error is assigned to the refusal of the court to give in connection with Special Issue No. 3, its requested instruction A, which reads: "By the term 'inherently dangerous,' as used in the court's charge is meant a danger infixed and indwelling and involved in the constitution or central character of the instrumentality at all times, and 'inherently dangerous' does not mean danger arising from mere casual or collateral negligence on the part of others with respect thereto, under the peculiar circumstances." This definition as re-

quested has been recognized in Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, 1082, and under the attractive nuisance doctrine in Emery v. Thompson, 347 Mo. 494, 148 S.W.2d 479–480 and Street v. W. E. Callahan Const. Co., Mo.App., 147 S.W.2d 153–155. This requested definition may have posed the question whether the "mere casual or collateral negligence on the part of others" in abruptly applying the brakes was a proximate cause of the accident or the failure of the alleged usual manner of constructing such derricks to care for such an emergency. Although the term "inherently dangerous" was not defined in the court's charge, it is thought that it is such a term as to be within the scope of the vocabulary of the average layman susceptible of only one meaning and was so used in its ordinary and every day meaning in the charge. 41 Tex.Jur. (Trial), Sec. 315; Texas & N. O. Ry. Co. v. Martin, Tex.Civ.App., 32 S.W.2d 363; Magnolia Petroleum Co. v. Long, 126 Tex. 195, 86 S.W.2d 450, 451, 455, 456. This point is respectfully overruled.

■■ Another derrick was erected upon the same location after the accident. In erecting the second derrick, the foundation block that had been used at the southeast corner was removed on the orders of appellant and another block substituted for that corner. Before the taking of any testimony and out of the presence of the jury, appellant moved that the court instruct plaintiff's counsel not to inquire, directly or indirectly, or in any way mention the fact that the corner block had been changed and replaced by another block after the accident. Over objections timely urged, plaintiff was permitted to introduce evidence that the southeast corner foundation block was removed after the accident and another block was substituted, because as testified to, appellant "instructed me not to use that block any more, because, in their opinion it was dangerous and they then pulled it up the hill and left it and to this good day it has not been used under a derrick"; "Mr. Roosth told me to remove the block"; "he told me it was against his better judgment to use it." The decisions have always held that this type of testi-mony is not admissible for among other reasons, if such testimony is admitted, it will tend to keep down improvements in safety devices. "The general rule well settled is that repairs or changes made subsequent to an injury are not admissible to show prior negligence." Blickman, Inc., v. Chilton, Tex.Civ.App., 114 S.W.2d 646, 650; 17 Tex.Jur. (Evidence), Sec. 234, and authorities there cited; 65 C.J.S., Negligence, § 225.

Grounded solely on the fact that appellant introduced evidence that the particular block had been removed with the explanation that it was so removed in order to use a block with a hairpin and that the block was not hidden after removal or after it was pulled up, it is concluded that the error in admitting the testimony complained of is harmless error. Henderson v. Jimmerson, Tex.Civ.App., 234 S.W.2d 710, 719; 3 B Tex.Jur., p. 664, and authorities there collated.

The other points presented have been considered and are respectfully overruled.

The judgment is affirmed.

### On Motion for Rehearing.

The majority of this court adheres to an affirmance of the judgment. Upon further consideration of this record I cannot become reconciled to an affirmance and respectfully dissent.

It is without controversy that appellant employed the services of an experienced, competent and reliable rig builder and likewise employed an experienced and competent drilling contractor, both operating as independent contractors. An affirmance of the judgment permits the independent contractors to escape responsibility for the alleged negligence and fastens the sole liability upon this employer who at the most exercised only such supervision as to see that the respective contracts were fulfilled. I feel that the rule reannounced in Southern Oil Co. v. Church, 32 Tex.Civ.App. 325, 74 S.W. 794, is applicable to this record and refutes the asserted liability of appellant.

Motion for rehearing is overruled.

WILLIAMS, J., dissents.