CITY OF FORT WORTH ET AL V. MATTIE V. LEE, GUARDIAN.

No. A-377. Decided April 11, 1945.
Rehearing overruled May 9, 1945.
(186 S. W., 2d Series, 954.)

554

R. E. *Rouer* and *Heard L. Floore,* for City of Fort Worth, *Todd, Crowley & Gambill,* for Texas Employers Insurance Association, all of Fort Worth, for petitioners.

It was error to hold as a matter of law that because the railway company was there first with its cut before Thirtieth Street was laid out and before the territory was annexed to the City of Fort Worth, it was therefore permanently relieved and excused from any duty to protect its excavation by fences, barriers, signals or lights. Virginian Ry. Co. v. Farr, 147 Va. 217, 136 S. E. 668; Greenfield v. Watson, 54 Geo. App., 9, 187 S. E. 183; Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okla., 142 192 Pac. 349; Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control & Imp. Dist. No. 1, 123 Texas 432, 73 S. W. (2d) 55.

It was error for the court to hold that the injured plaintiff was not guilty of contributory negligence in riding off the street at night without a headlight on his bicycle, over rough ground to the place where he received his injury. Jones v. Sunshine Gro. & Market, 236 S. W. 614; Texas Con. Theaters, Inc., v. Mauldin, 152 S. W. (2d) 930; Schawe v. Leyendecker, 269 S. W. 864.

W. H. *Slay* and *Robt. Harrison,* both of Fort Worth, for petitioner Mattie E. Lee, Guardian. (Herein styled respondent.)

Mr. Judge Brewster, of the Commission of Appeals, delivered the opinion for the Court.

This is a suit for damages for personal injuries brought by Mattie V. Lee, for herself and as guardian of Victor Atkins, the injured party, against the City of Fort Worth and Joseph B. Fleming, trustee for the Chicago Rock Island & Gulf Railway Company. Texas Employers' Insurance Association intervened to recover benefits paid the injured party under the workmen's compensation statutes. On jury findings the trial court rendered a judgment unsatisfctory to the city, the railway company and the insurance association. The court of civil appeals reversed that judgment and rendered it for the railway company and remanded the cause as to the city and the intervenor.

182 S. W. (2d) 831. Mrs. Lee, the city and the insurance association are petitioners here

Victor Atkins, 14 years old, was working as delivery boy for a drug store in Fort Worth. Returning from a delivery, between 9 and 10 o'clock on the night of January 5, 1943, and thinking he was on 29th Street, he was riding his bicycle west on 30th Street, when he went over a bluff caused by the digging of a cut for the tracks of respondent railway company, which passed north and south near the end of 30th Street. He fell about 20 feet and landed between the tracks, sustaining serious injuries.

The right of way was acquired by the railway company in 1893. The cut into which the boy fell was excavated in 1894 in accordance with sound engineering practice to make the grade such that trains could be operated thereon. Continuously from 1894 until the accident it remained in its original condition.

Festepco Heights was dedicated as an addition to Fort Worth in 1907 but was not formally annexed until 1922. The dedication showed that the addition was bounded on the west by the railway right of way and that no street was dedicated on or across the right of way. Accordingly, 30th Street ended at the east line of the right of way, at which point the thoroughfare turned north parallel with the right of way and was known as Pecan Street. Between 1907 and 1912 the two streets were laid out and graded, "but prior to October 16, 1907, there was no street at the present location" of either 30th Street or Pecan Street, "nor was there any road or other public way at substantaintially the same location." When the railroad track was laid and the cut excavated, there was no road, street, or other public way in the vicinity. At the time of the accident there was a railroad crossing on 29th Street, but there was no street, highway or path across the railroad from the point where 30th Street intersected the right of way.

It was 25 feet from the closest part of the traveled roadway of 30th and Pecan Streets to the eastern boundary line of the right of way. A shoulder, 6 or 7 inches high, marked the western line of this roadway 55 feet from the bluff over which Victor Atkins rode his bicycle. Of this 55 feet the first forty descended 4 feet and the remaining fifteen descended 3 1/2 feet to the bluff. The area was a weedy, rough and rocky native soil. 30th and Pecan Streets were graveled.

The plaintiff alleged that Victor Atkins' injuries were proximately caused by the negligence of both the city and the railway company in not having a sign at the point where 30th Street turned into Pecan and in not having a barrier either at that point or at the end of 30th Street in the right of way and by the negligence of the city alone in other particulars.

By cross action against the railway company the city alleged that if Victor Atkins' injuries were due to the negligence of any defendant they were caused solely by the negligence of the railway company in maintaining the cut without warning of its presence or keeping a barrier, which negligence was active and primarily, and that its own negligence, if any, was merely passive; therefore, in the event of judgment against the city in favor of plaintiff, it was entitled to judgment over against the railway company.

The trial court adjudged the defendants jointly and severally liable. The court of civil appeals held that the duty to protect travelers from dangers resulting from the manner of constructing and maintaining its streets was upon the city and that if it chose to maintain a street in a dangerous location the railway company could not prevent it, hence the latter was not liable. The city attacks that holding.

We have decided that the court of civil appeals correctly rendered judgment for the railway company. The controlling principle of law is clearly stated in Restatement of the Law of Torts, vol. II, sec. 368:

"A possessor of land who creates or maintains thereon an excavation or other artificial condition so near an *existing* highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them.

\* \* \*

"a. \* \* \* In order that the rule stated in this Section shall apply, the condition \* \* \* must have been created by the possessor or his predecessor in possession or by someone acting on their behalf or by their permission *after* the highway has been dedicated. \* \* \*

"b. When highway built near excavation. If a highway is established in close contiguity to an excavation or other dangerous condition upon the possessor's land, whether constructed

by him or otherwise created, *the duty to guard such dangerous condition is upon those who are charged with the duty of maining the highway in a reasonably safe condition for travel* and not upon the possessor of land upon which the dangerous condition is situate.

\* \* \*

"e. *The rule stated in this Section does not impose any duty upon a possessor of land to remove or guard dangerous conditions which existed at the time the highway was dedicated.* \* \* \*

"Illustration: 4. A is the possessor of land upon which there is a deep quarry. A highway is laid out and established running along the edge of this existing quarry. It is the duty of the municipality maintaining the highway for public travel, and not of A, to erect and maintain fences or other guards to protect travelers upon the highway." (Italics ours.)

In 25 Am. Jur., Highways, sec. 530, p. 812, it is said that the general rule has been held inapplicable in cases where the danger results from conditions existing at the time of the construction of the highway.

In the annotation appearing in 14 A. L. R., at page 1412, it is said: "An erection or excavation already existing, and not otherwise unlawful, does not become unlawful when the land to which it is immediately contiguous is dedicated to the public as a way, although it prevents the way from being as safe as it otherwise would have been."

Other authorities to the same effect are Galiano v. Pacific Gas & Elec. Co., 20 Calif. App. (2d) 534, 67 Pac. (2d) 388; State v. Society, etc., 44 N. J. L., 502; Morris v. Mills et al, 121 S. C. 200, 113 S. E., 632, 36 A. L. R. 302; Harvell v. City of Wilmington, 214 N. C. 608, 200 S. E. 367; Overton's Adm'r v. City of Louisville et al, 221 Ky. 289, 298 S. W. 968; Shearman & Redfield On the Law of Negligence (6th Ed.), vol. 2, sec. 343, p. 876.

The facts in Harvell v. City of Wilmington, supra, closely parellel those in this case. Second Street in the City of Wilmington came to a dead end at the edge of the railroad right of way At that point was a concrete retaining wall about five feet above the level of the railway property and about one foot above the street level. The plaintiff was riding at night in an automobile driven by another, who, thinking he was on Third Street on the way to plaintiff's home, drove down Second Street and over

the wall onto the right of way. At the conclusion of the testimony the trial court nonsuited the railway company and submitted the case to the jury only as to the city. In affirming that action, the Supreme Court of North Carolina said:

"The evidence fails to disclose with any degree of certainty whether the retaining wall at the end of Second Street is on railroad property. It does not disclose with any considerable degree of certainty the party who constructed the wall. It does show, however, that there is a cold storage plant on the north side of Second Street adjacent to the railroad property and that the wall was built at the same time the cold storage plant was constructed, seemingly as an extension of the foundation wall of the cold storage plant building. It further discloses that this retaining wall was constructed in 1912 and that at that time Second Street from Red Cross Street north had not been paved; that this section of Second Street sloped downward toward the railroad property; and that rain water had washed away the surface of this portion of Second Street to the extent that at the buondary of the railroad property it was practically on the level. It further discloses that thereafter the City improved this section of Second Street and paved it with Belguim blocks. As a part of this improvement the surface was filled in and leveled so that the Belgium block pavement was about one foot below the top of the retaining wall. It appears, therefore, that if the condition existing at the north end of Second Street created a dangerous situation and evidenced a want of due care this situation was created by the city and not by the defendant railroad company. The duty to take such measures as were necessary to protect the traveling public against any danger that might exist due to the fact that the wall was only one foot above the surface of the improved street rested upon the city and not upon the defendant railroad company."

We have not been cited to any Texas case squarely in point on the question under consideration nor have we found any. The city insists that the holding of the court of civil appeals is in conflict with Gulf, C. & S. F. Ry. Co. v. Milam County, 90 Texas, 355, 38 S. W. 747, and Texas & P. Ry. Co. v. Whitaker, 36 Texas Civ. App. 571, 82 S. W. 1051 (er ref.), but the contention cannot be sustained. In the Milam County case this court was construing the statute which requires railroad companies to keep their rights of way over public roads in proper condition for use by the traveling public, and it was held that the duty exists despite the fact that the public road may be constructed after the railroad was built. In the Whitaker case the same was said, in effect, with respect to the statutory obligation of railway com-

panies to construct culverts or sluices for necessary drainage of land contiguous to their roadbeds. Cases cited by the city from other jurisdictions may be similarly distinguished, except possibly some Georgia decisions which we do not feel bound to follow, inasmuch as they are contrary to the weight of authority.

■■ Obviously, Victor Atkins was not on 30th Street because the railway company dug the cut in 1894. He was there because a street, opened in 1907 and taken over by the city in 1922, was being maintained by the city for use by the traveling public. The railway company opened the cut according to accepted engineering standards on vacant pasture land when there was no public thoroughfare anywhere in the vicinity; and, in so far as any act of the railway company is converned, that would have been the situation on January 5, 1943. Changed conditions which resulted in Victor Atkins' injuries were wrought either by the city or by another whose acts the city adopted when it annexed Postepco Heights Addition. That when it took over the addition the city became charged with the duty to keep its streets in a reasonable safe condition for travelers is well settled. 28 Texas Digest, Municipal Corportations, key 763(1); McQuillin, Municipal Corporations (2nd Ed.), vol. 1, sec. 310. Yet it annexed the addition with 30th Street ending only thirty feet from an unguarded and dangerous excavation, and it maintained that street for nineteen years without any warning to westward travelers and without any barrier to keep them from going over the bluff if for any reason they went straight ahead instead of turning north onto Pecan Street. Therefore, if keeping 30th Street in a reasonablly safe condition for travelers required a warning or a barrier or both, negligence resulting from the fact that they were not provided must be charged to the city Elliott On the Law of Roads and Streets (4th Ed.), vol. 2, sec. 796, p. 1018. The authorities cited abundantly support the proposition that the railway company owed no duty in the premises. If it owed no duty, it could not be negligent in the particulars alleged by the plaintiff. Texas Central Ry. Co. v. Harbison, 98 Texas, 490, 85 S. W. 1138; Buchanan et ux v. Rose, 138 Texas 390, 159 S. W. (2d) 109.

■ The city seeks to fix primary liability on the railway company because of the latter's alleged failure to comply with the provisions of Arts. 6402 and 6320, R. S. 1925.

Art. 6402 relates to fencing to keep livestock off the railroad right of way. While it has been construed to include injuries to human beings in derailments caused by striking animals on

unfenced tracks, it has never been held to include situations like that presented in this case.

Art. 6320 makes it the duty of railway companies to keep their highway crossings in repair. It is enough to observe that the statute has no application here because there was no highway crossing, it being stipulated by the parties that 30th Street ended at the east line of the right of way.

■ The city contends that Mrs. Lee cannot recover because Victor Atkins was guilty of contributory negligence as a matter of law. There is no arbitrary rule by which this question can be determined. Unless, after looking at all the testimony, it is apparent that but one reasonable conclusion can be drawn from the evidence, contributory negligence is a question of fact. Texas & N. O. R. Co. v. Blake (Civ. App.), 175 S. W. (2d) 683 (er. ref.) And the principle applies although the acts alleged to constitute contributory negligence may amount to a violation of law. "There are cases in which a court is warranted in holding that a given act of negligence proximately caused an injury as a matter of law, but such cases are rare. Generally, the question is one of pure fact, and that rule obtains * * * in cases where the negligence consists in the violation of a statute or ordinance the same as in other cases." Seinsheimer v. Burkhart, 132 Texas 336, 122 S. W. (2d) 1063.

■ Victor Atkins testified that he thought he was on 29th Street. That street extended westward across the railroad tracks with residences along its course. Although it developed that he was mistaken as to his whereabouts, we cannot say as a matter of law that he was negligent in that respect. He testified that the roadway appeared to extend beyond the tracks as he rode westward; that he kept looking alternately forward and down as he proceeded; and that he saw lights here and there ahead of him from residences across the tracks, which confirmed his impression that he was on a through street. . He said that nothing occurred to warn him otherwise until he was flying through space. Although it is true that he rode over a rough, weedy ground after he left the roadway at the junction of 30th and Pecan Streets, the roadway itself was graveled and may not have been smooth. Nor does the fact that he had no lights on his bicycle foreclose the question. The testimony showed that he had reflectors on the bicycle, which was an alternative compliance with the ordinances of the City of Fort Worth. And if it be contended that his failure to have lights was a violation of some statute, we think it would still be a question of fact as

to whether that omission was a proximate cause of his injuries. Seinsheimer v. Burkhart, supra.

We think it is as reasonable to conclude that Victor Atkins was not guilty of contributory negligence as to conclude that he was. Therefore, that issue is for the jury. See City of Beaumont v. Kane (Civ. App.), 33 S. W. (2d) 234 (er. dism.), wherein the facts are closely akin to those in this case.

8 ▪ We have reached the same conclusion with respect to the city's contention that in keeping its streets reasonably safe for travelers it could not foresee that someone on a bicycle without lights might traverse 30th Street westward on a cold night, leave the traveled portion of the roadway instead of turning north on Pecan Street, and proceed 55 feet across rough ground to go over the bluff to his injury, in the absence of a warning or a barrier. We think that, too, was an issue of fact for the jury. City of Dallas v. Maxwell et ux (Com. App.), 248 S. W., 667, 27 A. L. R. 927, cited by the city, is not in point because in that case the automobile went into a ravine after the steering gear broke, so, as the opinion notes, "The breaking of the steering gear, and not the failure to erect a barrier, was the proximate cause of the injuries sued for."

■ Mrs. Lee complains of the holding by the court of civil appeals that it was error to admit the testimony of five witnesses that one traveling west on 30th Street would get the impression that it extended on across the railroad.

Victor Atkins testified that he had used 29th Street going across the railroad "at different times" before the night of his injuries; that on that night he thought he was again on that street and did not learn otherwise until he went over the bluff; that it was a cold night; that "It wasn't say a bright night, it was bright enough to where you could see the street, on each side of the street how far it went"; that as he proceeded on 30th Street he saw lights ahead of him; and that he had not been on 30th Street before. In plaintiff's petition it was alleged that as he approached the point where 30th Street turned into Pecan "the lights from various houses some three or four blocks west of the turning point aforesaid and across the tracks and right-of-way aforesaid, and especially the city lights along and upon West Thirtieth Street, were clearly visible, so as to make it appear to said minor, and to give him the impression and belief that the street continued west to North Main Street."

With the issue thus raised, C. J. Smith, Mrs. Pearl Jordan, Joe Gallick, Walter Gates and Mrs. Bertie Gates testified, over due objection, that it appeared to them that 30th Street extended across the railroad track. For example, Mrs. Jordan testified that she lived on 30th Street near the scene of the accident; that on many occasions she had been near the intersection of that street and Pecan; that she had had occasion at night to look along 30th Street in a westerly direction taking a view across the railroad tracks, and that "if you would be walking along that street looking west, you would be under the impression, by the lights, that the road went straight ahead." Mrs. Jordan's testimony was based on the situation as it had appeared to her under substantially the same circumstances as Victor Atkins claimed it appeared to him the night he was hurt. We think the testimony was admissible under the holding in City of Beaumont v. Kane, supra, and in Missouri, K. & T. R. Co. of Texas v. Long (Civ. App.), 23 S. W. (2d), 401. (er. ref.). Although it may be conceded that the testimony was her conclusion, it appears that it would not have been possible for the witness to give a complete word picture of the scene, so it was proper for her to testify to the impression produced on her mind by the facts as she saw them. Aetna Life Ins. Co. v. Robison (Civ. App.), 262 S. W. 118.

However, in view of another trial, we call attention to the fact that a witness cannot give that sort of testimony unless he first shows that his impression was gained under substantially the same circumstances as Victor Atkins was in when he claims he got the impression that 30th Street, extended across the railroad tracks. In other words, the witness' inference must involve the same material facts as Victor Atkins' inference involved, otherwise the testimony violates the hearsay rule. See Magee v. Paul, 110 Texas 470, 221 S. W. 254. For example, the testimony of Smith, who said he had viewed the scene only in the daytime, was improperly admitted.

Moreover, it was improper for any of these witnesses to state what impression Victor Atkins got in looking westward on 30th Street, as that was a matter for the jury. Nor was it proper to ask what impression a "stranger" would get, the pertinent inquiry being what impression the witness got.

■ Mrs. Lee complains of the holding of the court of civil appeals that the trial court should have given the city's requested issue inquiring whether Victor Atkins "at the time of and just prior to the accident, kept such a lookout as a person

of ordinary prudence would have kept under the same or similar circumstances." Although two other issues were submitted with reference to lookout, one was limited to the time that "he approached the intersection of Thirtieth and Pecan," while the other inquired whether he "failed to keep a lookout on the street on the occasion in question." It is true that where an issue is given the court is not required to give another which presents merely another phase or different shade of that issue. Rule 279, Texas Rules Civil Procedure. However, whether it presents only another phase or different shade must be determined under the peculiar facts of each case. Here it was shown that it was 25 feet from the closest part of the traveled roadway of 30th and Pecan Streets to the eastern boundary of the right of way and about 30 feet from that point to the bluff. The city pleaded that "in approaching the point where the accident occurred, he (Atkins) negligently and carelessly failed to keep a proper lookout for any dangers, excavations, obstructions or other impediments that he might encounter." This pleading and the testimony raised the issue of proper lookout on the 55 feet of ground Victor Atkins traveled after leaving the roadway, whereas the two issues submitted inquired as to a proper lookout before he left the roadway, therefore we think they were materially different from the issue requested.

■ Mrs. Lee assigns error in the holding of the court of civil Appeals that the trial court erred in refusing to submit an issue inquiring whether Victor Atkins "failed to have his bicycle equipped with an electric headlight with a lense not less than two and one-half inches in diameter on the front thereof." The city pleaded its ordinance requiring that any person "who rides a bicycle between the hours of 7:00 p. m. and 5 a. m. must have said bicycle equipped on the front thereof with an amber reflector at least two and one-half (2 1/2) inches in diameter, or an electric headlight with the lense not less than two and one-half (2 1/2) inches in diameter, and the rear of said bicycle must be equipped with a reflector of at least two and one-half (2 1/2) inches in diameter." It will be observed that either a headlight or a reflector on the front and rear of a bicycle would constitute a compliance with the ordinance. Since a reflector would furnish no light for a bicycle rider to see the road ahead, it is obvious that the purpose of the ordinance was to provide a method by which other travelers on the street could discover the presence of the bicycle. It follows, therefore, that contributory negligence could not be predicated on Victor Atkins' failure to have his bicycle equipped with an electric headlight as pre-

scribed in the ordinance. The action of the trial court in refusing the issue was correct.

There was no pleading of common law negligence in the boy's failure to have a headlight. And if it had been pleaded, the issue tendered would not be a proper submission.

■ The trial court refused to submit the city's requested issue inquiring whether "in the exercise of ordinary care for his own safety Victor Atkins should have discovered that he was off the traveled portion of the street in time to have stopped his bicycle before going into the excavation." We think that refusal was not error in view of the fact that the trial court did submit an issue as to whether Victor Atkins, "after he rode his bicycle off of the traveled portion of the street, was negligent, as that term has been defined to you, in failing to stop his bicycle just prior to the accident in question." We see no substantial difference between the two issues. Rule 279, supra.

■ Special Issue No. 1 submitted by the trial court inquired whether the city maintained a public street or thoroughfare at the point where 30th Street connects with the railroad's right of way. Special Issue No. 2 inquired whether such maintenance was negligent. The court of civil appeals held that these issues presented general negligence, in view of Mrs. Lee's allegations of specific negligence on the part of the city, and should not have been submitted. We overrule Mrs. Lee's point of error complaining of that holding.

■ The insurance association assigns error in the judgment of the trial court limiting its recovery to $301.00 weekly compensation payments made by it on account of Victor Atkins' injuries and denying its prayer for recovery of $1,262.55 paid by it for medical aid and attention furnished him. The court refused recovery for medical services on the ground that the association did not intervene until after the verdict had been returned by a jury instructed not to take the medical expenses into consideration. It is unnecessary to decide whether that action was error.. Since the case will be remanded the association will have the opportunity to intervene for the prosecution of all its just demands. Art. 8307, sec. 6a, R. S., 1925.

The judgment of the court of civil appeals is affirmed.

Opinion adopted by the Supreme Court April 11, 1945.

Rehearing overruled May 9, 1945.