**THOMPSON v. GOODE.**

No. 11914.

Court of Civil Appeals of Texas.
San Antonio.

March 9, 1949.

Rehearing Denied April 6, 1949.

Faulk, Sharpe & Cunningham, Brownsville, for appellant.

Blakely & Sloan and Claude E. Carter, Harlingen, for appellee.

NORVELL, Justice.

Guy A. Thompson, Trustee for the St. Louis, Brownsville & Mexico Railway Company, Bankr. Act, § 77, 11 U.S.C.A. § 205, has appealed from a judgment rendered in favor of the plaintiff below, Thomas H. Goode. The jury found that appellee had been damaged in the sum of $17,500, but this amount was reduced to $13,000 by a remittitur suggested by the trial court.

Appellant presents five points of error.

By the first point it is urged that the trial court erred in overruling appellant's motion for a directed verdict in that the evidence showed as a matter of law that appellee was guilty of contributory negligence.

On August 20, 1947, at about 8 o'clock A.M., a train operated by the appellant and an automobile driven by appellee collided at a railroad crossing approximately two miles west of the City of Harlingen in Cameron County, Texas. The highway running between La Feria and Harlingen parallels the tracks of the railway company. Appellee had traveled in a westerly direction until he reached a local road known as Lewis Lane, where he turned off the highway to the north, stopped his automobile and looked to the east and then looked to the west. Next, he started up his car and attempted to cross the railroad track when he was struck by the locomotive of a train approaching from the east. According to appellee, his position in the driver's seat at the time his car was stopped was approximately thirty-eight feet from the nearest rail and about thirteen feet north of the edge of the pavement of the highway. There was a telephone pole located some twenty-two feet east of his position, so that he could only see 450 feet down the track in an easterly direction. His view was further hampered by a brightly shining morning sun. One of appellee's witnesses, Jack Purnell, testified as to certain experiments made by him. He placed six markers along the railroad track to the east of the crossing at fifty yard intervals, the first marker being placed fifty yards east of the Lewis Lane crossing, and the last being 300 yards east of the crossing. He then took a picture with a camera upon a stationary tripod at the location where appellee said he had stopped. This photograph shows that the last three markers to the east, toward Harlingen, were obscured by the telephone pole. Purnell also sat in an automobile in the position appellee's car was stopped (according to his testimony) and looked to the east toward Harlingen. According to Purnell, approximately a quarter of a mile of track was obstructed from view of the telephone pole.

The appellant relies upon the case of Dales v. Thompson, 162 S.W.2d 156, by this Court, in which we held that the appellant was guilty of contributory negligence as a matter of law. The facts distinguish Dales v. Thompson from the present case, although a similar crossing collision was involved. In the Dales case the driver of the automobile did not stop before proceeding onto the railroad tracks, but, on the contrary, drove his car around a stationary truck and onto the railroad tracks, where it was struck by the locomotive. It further appears that in Dales v. Thompson the view of the driver of the automobile was clear and unobstructed, while in the present case we have the peculiar circumstance of the location of the telephone pole in relation to the point where appellee stopped his car.

In passing upon the refusal of a motion for an instructed verdict we are required to view the evidence in the light most favorable to the appellee. We must accept his testimony as to the position of his car when he stopped prior to attempting to cross the railroad tracks, which, together with the morning sun accounted for his being unable to see a portion of the railroad track to the east. In turn, it is reasonable to suppose that he did not fully realize the extent to which his vision of the track was obscured. Appellee's conduct is to be judged by the test of the ordinary prudence and it can not be said that he failed to use any degree of care for his own safety. The issue was therefore one for the jury.

In Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197, S.W.2d 332, 333, Mr. Justice Simpson, speaking for the Supreme Court, said:

"Contributory negligence barring a recovery as a matter of law is a conclusion sometimes compelled by the evidence, but such cases are relatively rare. Ordinarily this question is for the trier of facts and only

becomes a matter of law for the court when but one resonable conclusion can be drawn from all the testimony. City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125; Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, error refused. It is obvious that had Day been more cautious, he would not have been injured. But whether the precautions he took amounted to due care was properly left to the jury. He waited until the receding train had gone a little over half a city block past the intersection before starting up his car, and then looked to the east, from whence the train that struck him was coming, but saw no train. He then looked to the west and put his car in motion toward the tracks. Again he looked to the east but too late either to stop his car or to clear the track and so avoid a collision. *Thus the facts do not present a case where the injured person took no care for his own safety. It is only in instances where one crossing a railroad track has failed to exercise any degree of care for his safety that our courts have felt impelled to deny a recovery as a matter of law.* International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106; Gulf, C. & S. F. R. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895; 35 Tex.Jur. 496 et seq.

See also Hines v. Arrant, Tex.Civ.App., 225 S.W. 767, error refused." Italics ours.

We overrule appellant's first point.

■ By his second point, appellant contends that the case should be reversed because of jury misconduct. Appellee was seventy-three years old at the time of the collision in the motion for new trial it was asserted that while the jury was deliberating one of the members said that he knew a man eighty years of age who was working and drawing full pay. The foreman immediately informed the jury that this matter could not be considered and no further discussion was had with reference thereto. Insofar as this matter is concerned we are of the opinion that no probable injury is disclosed.

■ The remaining matter urged as misconduct presents a more serious question. Upon the trial a witness named Bradford and his wife both testified that they heard the bell of the locomotive ringing shortly before the collision at the crossing. A special issue inquired as to the ringing of the bell and was answered unfavorably to the appellant, and contrary to the testimony of the Bradfords. The appellant contends that while the matter of the ringing of the bell was being discussed by the jury, one of the jurymen, probably named Lewis, stated that he was personally acquainted with Bradford, and that said witness was unworthy of belief. If this contention be supported by the evidence, then a serious case of jury misconduct is presented. Elizondo v. Reagan, Tex.Com.App., 55 S.W.2d 540; Cloudt v. Hutcherson, Tex.Civ.App., 175 S. W.2d 643. Obvious unfairness results when testimony is submitted to the jury during its deliberations when no opportunity can be afforded to investigate, explain or rebut such testimony.

■ It is, however, well settled that the question of whether or not an alleged act of misconduct occurred is a question of fact to be determined by the trial court and its finding with reference thereto cannot be disturbed by this Court as long as it has support in the evidence. As the trial court overruled the motion for new trial, a finding is implied that the alleged act of misconduct did not occur. Almost one hundred pages of the statement of facts is occupied by testimony given by former members of the jury who were recalled as witnesses and interrogated with reference to their deliberations. All of the members of the jury were subpoenaed to appear as witnesses upon motion for new trial and nine of them testified. Lewis, who was the one accused of overt misconduct, was not called by either party.

The parties are not in agreement as to the testimony bearing upon the occurrence. As a result, we have carefully examined the testimony of all the witnesses (former jurymen) who testified with reference to the matter. There is some conflict of testimony.

According to the witness Perkins, the jurymen Lewis made the statement that he was acquainted with Bradford and didn't consider his testimony "to well." "He started to say something of that kind and the foreman stopped him." Hoge testified that

he could not recall the exact words but that a statement was made by a man who knew the witness Bradford to the effect that Bradford's statement couldn't be believed and his reputation was rather bad. Pena remembered nothing about the incident. Cardenas testified that he believed it was Mr. Lewis that said he knew Bradford, and that he didn't think much of his testimony. Mansur didn't recall any statement made by a juror about the witness Bradford based upon his personal knowledge. He said that someone started to talk of his personal experiences and was told that this was contrary to the instructions given them by the court. Haven testified that Mr. White, the foreman, warned the jurors against relating their personal experiences or personal knowledge. He said that Lewis mentioned the Bradfords and asked if he might make a statement or ask a question and then stopped. The witness and White, the foreman, both told him "no," and Lewis did not complete the statement. His version of this incident, given upon cross examination, was as follows:

"Q. You say Mr. Lewis did make some statement about the witness Bradford? A. No, he said, 'Mr. Bradford,' and then said, 'May I make a statement about the witness Bradford,' and I said no, and then the foreman told him 'no.'

"Q. You mean that was all he said? A. Yes, sir; what he was going to say about I don't know."

Garrison didn't mention the incident in his testimony. Sesso testified that he heard the foreman warn the jurors against making statements based upon their personal knowledge, but didn't recall what was said immediately before the foreman gave this warning. However, upon cross examination this witness stated that one of the jurors did say that he knew Bradford and his wife, "if he remembered right he said he wasn't any good, that is the best I remember it. * * * The foreman stopped it right then and said there would be no discussion about that."

White, the foreman, testified that Lewis started to say something. "I don't know whether he got it all out. He was talking about the Bradfords * * * I think I told him we shouldn't consider it, it wasn't

in evidence." White said that he could not give the exact words used by Lewis, but it was something to the effect that he didn't believe what Bradford said, and that after the warning by the foreman nothing further was said about the matter.

■■ We are of the opinion that the evidence is sufficient to support the implied findings of the trial judge. It is not misconduct for a juror to state that he does not believe a witness is telling the truth and to argue with his fellow jurymen that the witness is unworthy of belief. The conduct condemned is the improper insertion into the trial of unsworn testimony of a prejudicial nature. There was testimony by Haven and White in particular, that Lewis was stopped before he related any personal experience had with Bradford which would reflect upon the latter's credibility as a witness. The trial court was authorized to believe and rely upon this testimony and thereunder conclude that no overt act of misconduct had actually occurred. We overrule appellant's second point. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Tumlinson v. San Antonio Brewing Association, Tex.Civ. App., 170 S.W.2d 620.

Appellant by his third point contends that the amount of the judgment is excessive. In this connection, appellee submits a cross-point complaining of the trial court's action in requiring a remittitur of $4,500, so as to reduce the judgment to $13,000.

The evidence, viewed in the most favorable light to the appellee, shows that appellee was a man seventy-three years of age, who was working regularly as a carpenter, doing both construction and cabinet work. He was a man in good health for his age and of orderly habits. Prior to his injuries he had been working regularly about forty-four hours a week.

As a result of the collision, appellee suffered a severe concussion of the brain, was rendered unconscious and did not regain consciousness until some four days later. He remained in a hospital for two weeks and suffered intense pain throughout this time. Some of his ribs were fractured, his head lacerated, and his body severely bruised. The brain concussion was a

severe one and resulted in the blood draining into the spinal fluid. Probably as a result of this concussion, appellee has practically lost the use of his left arm and his left leg causes pain and gives him trouble. He has been unable to work since the date of the collision and there is medical testimony indicating that appellee has reached the maximum state of recovery. From the evidence it can be gathered that appellee is wholly incapacitated from continuing his occupation as a carpenter. Appellee in the future will probably be unable to do anything other than work at odd jobs requiring very little physical exertion, and will continue to suffer pain and discomfort as a result of his injuries.

It was shown that prior to the collision appellee suffered some from arthritis and an enlarged aeorta, but apparently such conditions are not unusual in a person of his age.

In contending that the judgment is excessive the appellant cites the cases of Henwood v. Moore, Tex.Civ.App., 203 S.W.2d 973; Younger Bros. v. Hibbard, Tex.Civ.App., 201 S.W.2d 624; City of Houston v. Fondren, Tex.Civ.App., 198 S.W.2d 480; Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 197 S.W.2d 157, affirmed 145 Tex. 571, 200 S.W.2d 624; Kimbriel Produce Co. v. Webster, Tex.Civ.App., 185 S.W.2d 198; Phoenix Refining Company v. Morgan, Tex.Civ.App., 178 S.W.2d 175; St. Louis, I. M. & S. R. Co. v. Kendall, 114 Ark. 224, 169 S.W. 822.

■ While no two cases of damages resulting from injury are exactly the same, the cases cited do give illustrations of the application of the rules relating to the permissible amounts of recovery allowed in cases of this kind. One of the factors which must be considered is the purchasing power of the dollar at the time the judgment is rendered, and when this factor is considered, together with the element of physical and mental pain and suffering, we are of the opinion that the evidence will support a recovery of $13,000. We overrule appellant's third point.

■ Appellee's cross-point is likewise overruled. We are in accord with the trial court's action requiring the remittitur of $4,500. The amount of damages recoverable by appellee is a sum of money which will compensate him for his losses and suffering resulting from his injuries, if paid at the present time. Considering this factor and the advanced age of appellee, it is rather apparent that an award of $17,500 is excessive and that the trial court was correct in requiring a remittitur. In our opinion, $13,000 is the maximum amount of recovery authorized by the evidence.

■ No reversible error is presented by appellant's fourth point, complaining of the trial court's failure to give a requested instruction to the jury with reference to certain remarks made by counsel, especially in view of the fact that the trial judge offered to give an adequate instruction and this offer was rejected by appellant.

By appellant's fifth point it is asserted that the trial judge abused his discretion in allowing appellee to make a trial amendment to his petition. It was charged in the original petition that immediately prior to the collision appellant's servants operated the train at a high rate of speed, failed to keep a proper lookout, and failed to properly sound the whistle and ring the bell, as they approached the crossing. The trial amendment set out statutory grounds of negligence in charging that the operators failed to blow the whistle and ring the bell at least 440 yards from the crossing. Art. 6371, Vernon's Ann.Civ.Stats., Art. 1672, Vernon's Ann.Pen.Code.

■ By the original pleadings, appellant was put on notice that an issue in the case would be that of proper warning of the train's approach to the crossing. Under our system of pleading, the emphasis is placed upon facts rather than upon forms or classes of actions. We do not believe that the appellant was surprised because of the fact allegations he was called upon to meet in the trial amendment. The trial court did not abuse his discretion in allowing the amendment. Rule 66 Texas R.C.P.; Burroughs v. Bunch, Tex.Civ.App., 210 S.W.2d 211, wr. ref.

The judgment of the trial court is in all things affirmed.