### DRIVER v. WORTH CONST. CO.

No. 15469.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 18, 1953.

Rehearing Denied Jan. 22, 1954.

Calloway Huffaker and Harold Green, Tahoka, for appellant.

Chas. J. Murray and M. Hendricks Brown, Fort Worth, for appellee.

MASSEY, Chief Justice.

From a judgment for a defendant in a suit filed by the widow of a deceased automobile driver based upon negligence claimed to have caused an accident and such driver's death, the plaintiff appeals.

Judgment affirmed.

During the very early hours of May 13, 1952, the time being about 2:20 o'clock A.M., Boyd Driver was operating his automobile in the municipality of River Oaks, in Tarrant County, Texas, upon a section of State Highway 183 which had not yet been opened to use of the general traveling public. While so driving he drove off the concrete slab of pavement into an open space or gap left in the pavement by the roadbuilding contractor and across the approximate 30 foot space representing the open space or gap, and into the blunt end of the pavement slab beginning at the opposite side of the open space or gap. The collision of the front end of Boyd Driver's automobile with the end of the concrete slab was one of considerable force and violence, and Driver was thrown forward into the windshield and he was injured so that he died six days later.

The defendant, Worth Construction Company, was a corporation engaged in road construction and paving. By contract with the State of Texas, it conducted the work of converting Highway 183 through River Oaks Village from a highway of a type with a single-roadway to a boulevard-type highway. The operation was one which would upon completion have resulted in the roadway theretofore existing being one upon which only westbound traffic would travel, and the new pavement strip which was constructed parallel with and immediately to the south of the old roadway being one upon which only eastbound traffic would travel. There was to be an unpaved strip, or parkway, which would lie between the pavement lanes and which would separate vehicles traveling toward the east from those traveling toward the west. Prior to the time this construction was begun Highway 183 was already carrying a rather heavy load of traffic, both during daylight hours and at night, and during the time of construction, this traffic continued in effect, all of it being upon the old roadway or pavement theretofore existent. The new roadway and new pavement being installed thereon had not yet been opened for use.

There were several streets, intersecting with Highway 183, which carried traffic to and fro from one side of the highway to the other, and which served to get vehicular traffic off of and onto the highway in question, and at these points the Worth Construction Company had adopted varying methods whereby this necessary purpose was accomplished. For instance, at the intersection of the highway with Ohio Garden Road, which intersection was the site of the accident of Boyd Driver, the gap was left out of the new pavement strip, and no barricades were placed to either side of Ohio Garden Road at the new construction, but four flares, two upon the surface of the concrete to either side of the intersecting road, and one each of such flares upon the corners of the two slabs made by the failure to connect such slabs together. The surface of Ohio Garden Road was about one foot below the level of the pavement slabs, ends of which were to either side of such road. On the other hand, the next intersecting road to the west which was left open and available for north-south traffic to cross Highway 183 was Merritt Street, and at this intersection there was a "sawhorse-type barricade" placed upon the newly constructed pavement at the east side of such intersection. At the intersection of Merritt Street and Highway 183, the newly poured pavement extended across such street, so that a member of the traveling public who was proceeding in a northerly direction on Merritt Street would approach the intersection, then drive upon and across the new pavement, then upon and across the "break" of the 29 foot wide "parkway section", comprising the area dividing the new part of the highway from the old part, then upon and across the old pavement of the highway then existing and completed and open to the traveling public. Besides the aforesaid barricade at the intersection of Merritt Street with Highway 183 there were some flares burning, at least one of which was placed at the north end of the barricade. There was no sign on the barricade itself lettered so as to warn against entering upon the new pavement, nor was there any sign lo-cated proximate to the barricade conveying any similar warning. The only signs in any wise relating to such were those visible to motorists traveling either north or south on Merritt Street, one each of which was placed so that just before entering either the new or the old sections of the highway from either the south or the north such a motorist would find at his right, in position where "stop-signs" are ordinarily found at roads intersecting into highways, medium sized lettered signs reading "Construction Drive Carefully".

Earlier during the night of the fatal accident, Boyd Driver, who had a full time job as to which he had received notice he was to be "laid off", had gone to the cafe known as "Tuck's Grill", which was on Main Street in downtown Fort Worth. The purpose of going to the cafe was to discuss with its operator the possibilities of obtaining "full-time" employment from him. It appears that Driver worked "part time" at the cafe, accommodating the hours of such part-time employment to his regular job. He was therefore personally acquainted with the cafe operator and with Ira Siratt, a "full-time" employee of the cafe. Mr. Siratt lived in a downtown hotel located within a very short distance of the cafe. Mr. Driver lived in a section of Fort Worth located to the east or southeast of the business district. The cafe operator lived northwest of Fort Worth in the River Oaks Village area. Pursuant to Driver's conversation with the operator of the cafe, or pursuant to the accomplishment of the purposes of his visit initially occasioning his trip to the cafe, Driver volunteered to drive such cafe operator to his home in River Oaks. Mr. Siratt went along on the trip, activated in so doing by his desire for the companionship of Mr. Driver and for the pleasure of the drive. The normal return trip from River Oaks to Driver's home would take him by the section of Fort Worth where Siratt resided. Upon the trip to the cafe operator's home from the cafe location, Driver traveled in a westerly direction on Highway 183 upon reaching that highway by a route taken to

the northwest from downtown Fort Worth. In driving toward the west on Highway 183, he traveled the existing and open highway in use which paralleled the new roadway in the process of construction for a considerable distance before turning to the left and driving to a point south of the highway to the home of the cafe operator. In so doing he observed that over the entire roadway such travel as there was on Highway 183 was solely by use of the old section of the highway. At least the evidence established that such travel as there was upon the highway during that period was all on the old section.

After leaving the home of the cafe operator Mr. Driver followed the practical route which would have enabled him to return to downtown Fort Worth by way of returning first to Highway 183 and driving toward the east thereon, afterward to proceed toward the southeast and into town. That is, he did so up until the time he reached the highway by way of traveling in a northerly direction on Merritt Street, at which point he would normally turn to his right and drive east on the old roadway section of Highway 183 which was the road used by him on his initial trip. Upon reaching the highway, however, he drove his car upon the new pavement slab which intersected Merritt Street, thence across the same and upon the "break" in the "parkway section" dividing the new section from the one in use, thence across the "break" and upon the old roadway section which was open and in use by the general traveling public. Here there was a departure from the usual course of events. Mr. Driver proceeded to drive across said roadway and some 100 feet to the north thereof, still in Merritt Street. Then he turned his automobile around and drove back in a southerly direction and upon the old roadway section, thence across the same and upon the "break" in the "parkway section", and thence across such break, turning to his left as he did so, so that driving close to the north end of the "sawhorse-type barricade" heretofore mentioned, and past a burning flare located by the north end thereof, he drove up onto the

new pavement slab intended for use by eastbound traffic once the new part of the highway would be opened for travel, and turning and directing his automobile toward the east he drove in an easterly direction down the newly poured strip of concrete. He continued on this course until the automobile reached Ohio Garden Road, 700 to 800 feet east of Merritt Street, where the break in the new pavement was (where no concrete had been poured and there was a gap which was both unpaved and ungraded, the surface of the ground within which was below the level of the concrete) at which point his automobile went into the pit or hole thereby occasioned, thence into the wall constituted by the concrete beginning again to the east of Ohio Garden Road. At the point of entry near the barricade at Merritt Street there were tire marks indicating other vehicles had at a prior time driven onto the new part of the highway in like manner.

■ It is to be noted that the undisputed evidence established that no other vehicle was possible to have been observed by Mr. Driver upon the new section of road where he attempted to travel immediately prior to the time of the accident, and that such vehicles as there were upon the highway were traveling in both directions on the old roadway to his left. This was true both as to the trip to River Oaks, and as to the trip back toward Fort Worth. Furthermore, the evidence established that there were flares all along the north side of the new construction between Merritt Street and Ohio Garden Road, clearly visible from either the opened or unopened roadways of Highway 183. There was no evidence of course that the deceased was unaware of these flares, of the fact there were signs that he had passed marked "Construction Drive Carefully", of the fact that all the vehicular traffic traveling the highway was moving upon the old portion of Highway 183, or that there was a barricade close by the point he drove onto the unopened section of the highway. Under the evidence the jury was justified in concluding that the deceased was aware of all of these or of any of them.

Special Issue No. 1 read, "Do you find and believe from a preponderance of the evidence that at the time of and immediately before the happening in question the defendant failed to have a barricade on the new concrete roadway at its intersection with Merritt Street sufficient to prevent the travelling public from entering upon such roadway? Answer 'yes' or 'no'." To this issue the jury returned as its answer "No", disregarding the issues conditionally submitted thereon as to negligence and proximate cause. The plaintiff did not object to the submission of nor to the form of such issue. Upon the motion for new trial, it does appear that the majority of the members of the jury believed that they had answered the issue to the effect that the defendant did fail to have a sufficient barricade in such respects.

The jury found for the plaintiff that the defendant, Worth Construction Company, was negligent in failing to have a barricade on the new concrete highway at its intersection with Ohio Garden Road, and that such negligence was a proximate cause of the accident. Then, in answer to the defensive issue, numbered 34 in the charge, "Do you find and believe from a preponderance of the evidence that Boyd Driver was negligent in failing to travel on the old portion of Highway 183 on the occasion in question?", the jury did find that he was negligent in such respect, and in the issue conditioned thereupon additionally found that such negligence was a proximate cause of the accident. It is noted that the contributory negligence alleged in the defendant's pleadings was in the same form, the allegation of the pleading being that plaintiff was negligent "in failing to proceed to and travel on the main portion of Highway 183 running parallel to the roadway under construction on which he was traveling". No exception was directed to this part of such pleading. The jury refused to find in the defendant's behalf that Driver failed to keep a proper lookout, or that he failed to heed either the flares or the warning signs down at the point on Merritt Street where he turned into and drove upon the new concrete, or that he

was driving at a negligent rate of speed immediately prior to the time of the collision. There was no issue submitted analogous to Special Issue Number 34 relating to the same object of inquiry, such as for example an inquiry as to whether Driver was negligent in driving upon the roadway or portion of the highway that he did drive upon, and the only manner of the submission of such question would be by way of Special Issue Number 34. The plaintiff did not submit any specially requested issue related to this or any other question. She did object to Special Issue Number 34, "for the reason that the same is (1) a double submission of the same matter inquired of in reference to all of the other defensive special issues, (2) is not the submission of an ultimate issue and (3) allows the jury to speculate as to when and where a person should or should not have operated a car upon the old portion of Highway 183 or upon the new portion of Highway 183."

Based upon the quoted portions of the verdict the Court entered judgment in behalf of the defendant, Worth Construction Company, and against the plaintiff, Imogene Driver, to which judgment the plaintiff duly and seasonably excepted and has perfected an appeal to this court.

It is apparent that we need not consider appellant's points premised upon her contention that the judgment should be reversed and rendered in her behalf in the amount of the damages found by the jury because of the finding of primary negligence which was a proximate cause of the fatal accident, unless and until we first determine that the issue upon the contributory negligence of the deceased found by the jury to have been a proximate cause was erroneously submitted by the court and faultily answered by the jury. Should it be determined that the issue was an ultimate issue properly submitted and answered, then our consideration would be directed to a determination of whether the cause should be remanded for another trial because of the three propositions of error claimed to have been resultant from improper examination of a witness by appel-

lee's counsel, erroneous admission into evidence of photographs offered by appellee, and improper direct testimony from appellee's supervisor concerning inspection of barricades, etc., by the State Highway Department.

Actually the judgment rendered was correct if there was no prejudicial misconduct of the trial in the respects complained of, and if the contributory negligence issue, Special Issue 34 (and the proximate cause issue conditionally submitted thereunder), meet the tests to be applied because of the objections made by appellant to the court's charge. We have arrived at the conclusion that these issues meet the tests to be applied and that the judgment rendered was a correct judgment, and we will discuss our reasons for so holding.

■ Appellant advances the argument that the issues constitute double submission of the same matters inquired about by the other issues. The other issues which could bear upon the question and which would be related as to time during which the deceased was traveling upon the pavement slab he was driving upon immediately prior to the time of the accident were those relating to the deceased's lookout and speed and control, to his driving while intoxicated and to his failure to slacken the speed of his automobile immediately prior to the time of the accident. Appellant is wrong in her contention that the jury found favorably to her upon such issues. The issues were all submitted with the burden thereon placed upon appellee. The most that might be said would be that the jury failed to make a favorable finding upon these issues in behalf of the appellee. None related to the question of whether the deceased was or was not negligent in driving upon the wrong roadway after getting on it, or in continuing to drive upon the wrong side of a highway. Therefore the issues in question are not duplicitous of any others.

■ It is true that the jury found that Driver did drive around the barricade and the flares at the Merritt Street intersection

with the new roadway. The jury refused to find that these acts on Driver's part were negligent acts. It is likewise true that the jury found that Driver did not fail to heed the flares, warning signs, and the barricade at the Merritt Street intersection. These findings were certainly related to the question of Mr. Driver's negligence in first driving his automobile up onto the pavement slab of the new roadway. The findings are related to the "driving upon" the new roadway in the immediate vicinity of the barricade, flares and signs. They are not necessarily related to the driving of his automobile in the course of travel down the new roadway between that point and the Ohio Garden Road intersection. In the case of an automobile collision the driver of a motor vehicle may not be negligent in driving upon the left-hand side of the pavement when he first gets upon that portion of a highway, but he may be negligent in continuing to drive upon such left-hand side as he continues in his travel down the highway. Absent any statutes dealing with the question, the circumstances dealing with such course of action on his part and decisive of the negligence question may be similar or even interrelated with the circumstances which freed from negligence his act in first driving on the left-hand side. It may be only the addition or deletion of an element of such circumstances which constitutes a change whereby in the one instance the act was non-negligent and in the other the continuance of the act became negligent. The specific averments made in the answer of the appellee upon which the case was tried embodied pleadings which supported the submission of the special issues, answer to which resulted in the findings set out in the first two sentences of this paragraph. Yet the pleadings of the appellee set forth its charge of contributory negligence against the appellant upon both counts, the first "driving upon" the new roadway, and the second the "traveling upon" the new roadway after driving upon it. Though these pleadings might have been subject to attack as constituting a general averment of negligence as to Driver's "traveling upon"

the new roadway after first getting upon it, they were not objected to. Clearly and in any event there would be no necessary duplicity of the finding that Driver was negligent in driving on the new roadway after entering and the specific answers discussed, and there is no conflict in the findings.

■ "It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled." Casualty Underwriters v. Rhone, Com.App., 1939, 134 Tex. 50, 132 S.W.2d 97, 99.

The balance of the objection advances greater difficulty. Of course the manner of submission allows the jury to reason as to whether upon the occasion in question—which clearly means immediately prior to and at time of the fatal accident—the deceased should or should not have operated his automobile upon the old portion of the highway rather than upon the new portion. Their reasoning in this regard could be termed speculation, but it is reason if thereby their mental processes enable them to arrive at a finding of fact which is an ultimate fact. If the fact the jury did find (to-wit: that the deceased was negligent in failing to travel upon the old portion of the highway) was an ultimate fact which would support a judgment, then the submission was proper and the finding was proper.

Of course, if the question posed by the issue related to whether the deceased was negligent in not driving by way of some other route than Highway 183 on the return trip to town it would not be an ultimate issue. Such would be analogous to inquiring of a jury by way of a special issue as to whether a plaintiff in a personal injury case who was injured on an automobile trip from Fort Worth to Wichita Falls, Texas, upon the highway route which runs through Decatur and Bowie, was negligent because he failed to make the trip to Wichita Falls upon the highway route which runs through Jacksboro. Contrarily, if the question posed by the issue was whether such a plaintiff, who was injured while driving upon a highway (embracing two separate roadways divided by a parkway, one roadway traveled solely by vehicles proceeding in a northerly direction and the other traveled solely by vehicles proceeding in a southerly direction) was negligent in failing to use the roadway for southbound traffic when he was in fact traveling south in his automobile, but was using the roadway open for use only by northbound traffic, then the question posed would be one which would be an ultimate and controlling issue. In the latter instance the question would be no different from that in a negligence case growing out of an automobile accident which occurred upon a highway with a single slab of pavement, divided down its center by a black or white line, as result of one driver getting across onto the wrong side of the road. On such a highway an automobile driver is under the statutory duty to drive upon the right-hand side thereof except in certain specified instances. Texas Revised Civil Statutes of 1925, Vernon's Ann.Civ.St. Article 6701d, of the Uniform Act Regulating Traffic on Highways in Texas, at Section 52 reads:

"Upon all roadways the driver of a vehicle shall drive upon the right half of the roadway, except as follows:

"1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

"2. When the right half of a roadway is closed to traffic while under construction or repair;

"3. Upon a roadway divided into three (3) marked lanes for traffic under the rules applicable thereon; or

"4. Upon a roadway designated and signposted for one-way traffic."

■ The same duty is incumbent upon the driver of a vehicle who uses a boule-

vard type highway open for traffic, but with the roadway used by traffic proceeding in one direction divided by a parkway from the roadway used by traffic proceeding in the opposite direction. The application of the statute in such instances is demonstrated by referring to the definitions in the Act of the terms "roadway" and "highway" under Section 13 of T.R.C.S., Article 6701d.

Except for the fact that the new portion of Highway 183 in the vicinity of the fatal accident was not open, and except for the circumstance that the physical situation occasioned by the building of the new portion of such highway to the south rather than to the north side of the old existing highway, the situation would be no different from the situation posed in the paragraph immediately preceding. Of course, as to the situation posed in the preceding paragraph the statute quoted would apply. As to the situation which actually existed the statute could not apply, but the rules of common law would. Applying common-law rules to the situation which did actually exist upon the occasion and at the time and place in question, we are of the opinion that the deceased's negligence in then and there driving upon the new part of Highway 183 was an ultimate issue, since it meets the test of "whether or not an answer, one way or another, by the jury, to the tendered interrogatory, in connection with other complementary parts of the ultimate issue · likewise submitted, would be conslusive and binding upon the court in the matter of rendering judgment". Speer, Law of Special Issues in Texas (1932), Sec. 107. This we understand to mean that such an issue is at least a part, and may constitute the whole, of the ultimate issue. See 41–B Tex.Jur., p. 485, sec. 395, and also p. 475, secs. 385 and 386. Also see exhaustive discussion in 25 T.L.R., p. 391; see also the remarks of Chief Justice Alexander from his lecture before the Judicial Section, State Bar of Texas, 1941, found in Franki, Texas Rules of Civil Procedure (1942), p. 293 et seq., and particularly at page 294. The submission actually made was an inquiry of this same ultimate fact

under the conditions obtaining because it properly presupposed that only one street or highway was in question and was the subject of the issue. The question considered the highway as one highway with a "new portion" and an "old portion". Hence, the question asked in the issue was merely a varying phraseology of the same issue that would have been the case had it affirmatively inquired whether the deceased was negligent under the circumstances in driving where he did drive when the accident occurred.

Of course, in either event the question posed would necessarily be referable to the question of whether the deceased, at such time, knew or in the exercise of ordinary care should have known that the section of the roadway upon which he was driving was not open to travel by the general public. If so, he knew or should have known of his danger and liability to injury therefrom. His negligence in the respect found was related to what his knowledge actually was or should have been in that regard, but it was an ultimate question or a part thereof relating to his contributory negligence. Under Rule 279, Texas Rules of Civil Procedure, where one or more of the issues necessary to sustain a ground of recovery or defense are necessarily referable to such ground, and such issue or issues are submitted to and answered by a jury, with omission of one or more other issues which should have been submitted as a part thereof, then the submission and answer are sufficient where there has been no objection to the omission (or special request made for submission by the party having the burden upon such question) of such issue or issues and there is evidence to support a finding thereon had there actually been a submission of the issue or issues omitted. In such an instance the omitted issue or issues will be deemed to have been found in such manner as to support the verdict and judgment. 41–B Tex.Jur., p. 867, sec. 626, and cases cited thereunder; cases discussed at 23 T.L.R., p. 189. The jury found the negligence and then found the negligence to be a proximate cause. Application of the rule

to this case compels a holding that the jury deemed the deceased chargeable with knowledge, under and in view of the circumstances and conditions shown by the evidence, that he was driving upon a roadway which had not been opened to the general public upon the occasion immediately prior to the accident.

Of course, the submission of Special Issue 34 was as to the deceased's negligence in that he "failed to travel on the old portion of the highway" rather than in that he "did travel upon the new portion" of the highway-to-be, it not yet having been opened to the public. There was no phase of the objection which was made which complained of a negative rather than an affirmative form of submission.

■ Reverting again to the argument of appellant that the issue posed no more question as to the deceased than as to all other vehicle operators who were traveling upon roads and highways in the state at the time the accident occurred other than the "old portion of Highway 183", it is to be observed that no phase of the objection which was made to the submission of the issue was based upon the contention that the form thereof constituted a general charge for that reason. Instead, the very objection made argued that the issue "allows the jury to speculate as to when and where a person should or should not have operated a car upon the old portion of Highway 183 or upon the new portion of Highway 183". If the form of submission was not what was formerly termed fundamental error and the issue itself palpably erroneous, then the appellant's objection was insufficient as an objection on this basis because of her failure to demonstrate in the course of the objection the nature of the error inhibitive of the issue or the prejudice likely to be resultant to her from its submission. The issue met the tests applicable in light of appellant's objections actually made and specified. The objection as otherwise considerable in light of arguments in appellant's brief would be insufficient because of generalization, consideration of which would have imposed a greater burden upon the trial court than required by law. 3-A Tex.Jur., p. 233, sec. 180, regarding T.R. C.P. 274.

Having arrived at the conclusion that there was no reversible error occasioned by the form and manner of submission of the issues on the contributory negligence of the deceased husband of the appellant, and that the answers thereto made by the jury were in settlement of an ultimate question, we will consider the assignments of error because of events occurring during the course of the trial.

■ Firstly, the appellant complains of the manner of cross-examination of Mr. Siratt. From the statement of facts it does appear that appellee's counsel did repeat the answers made by the witness that counsel deemed favorable to his theory of defense before going on to the next question. The record, of course, does not show that counsel so repeated the answers in a sarcastic tone of voice and with his head turned to the jury while so doing, and due to which appellant claims the evidence was then being commented upon by counsel. A cross-examiner may proceed in the cross-examination of a witness according to his own method so long as it remains within the bounds of propriety and reason. 44 Tex.Jur., p. 1146, sec. 148. The objection is truly related to the propriety. A purpose of cross-examination has been stated to be "the diminution of the force and weight that will be accorded to the witness' testimony". This purpose may be accomplished by weakening the force of a witness' testimony though the testimony itself is not impeached. 44 Tex.Jur., p. 1150, sec. 150. Obviously appellee's counsel was attempting just this. The conduct and extent of cross-examination is a matter for the control of the trial judge and his rulings thereon will not be disturbed if not arbitrarily and unreasonably made. 44 Tex.Jur., p. 1146, sec. 148. Those few cases which hold that rulings of a trial judge have been arbitrarily and unreasonably made are in the main cases where the right of cross-examination have been unduly restricted. A case where great latitude in cross-examina-

tion was allowed must be extreme indeed for an appellate court to hold a trial judge in error in allowing it. In the present instance we are compelled to the opinion that the conduct of the trial judge was well within the province of his authority and that he did not err.

 Secondly, the appellant complains of the admission into evidence of photographs of the area at Merritt Street and Highway 183, which photographs were taken at a time subsequent to the time the deceased husband of the appellant was killed. From the evidence it appears that the photographs showed certain conditions in the scene portrayed therein which conditions had not obtained the night of the accident. It appears, however, that the changes were not of a character which might tend to prejudice appellant's case theory. It likewise appears that the changes were explained and that the jury, though it had before it the photographs, likewise had explanatory testimony whereby it could consider the photographs in light of the evidence concerning the differences therefrom which actually obtained the night of the fatal accident. Admission of the photographs over objection was a matter of discretion on the part of the court. The court did admit them. Obviously the court must have considered that their admission would aid the jury in considering the evidence and in finding facts based thereon. We believe this was justified and that no abuse of discretion exists. In view of the fact that the pictures were coupled with oral testimony, application of which to the scene portrayed by the pictures in effect operated to change the pictures themselves into other pictures which did effectively portray the actual conditions obtaining at the time which was actually in question, the photographs thereby became admissible. 32 C.J.S., Evidence, § 715, p. 623; McCasland v. Henwood, Tex. Civ.App., Texarkana 1948, 213 S.W.2d 555, error refused, n. r. e. The weight to be given the photographs which were introduced was for the jury, admissibility requirements being satisfied. Blashfield's Cyc. of Automobile Law, sec. 6362. Fur-

thermore, it may be that even though admissibility of the photographs was erroneous, such error was not related to the issues on contributory negligence which were found against appellant since the issues submitted to the jury relating to negligence of the deceased in entering upon the newly constructed pavement at the Merritt Street intersection were found favorably to the appellant. And in any event it is not made to appear within the requirements of T.R.C.P. 434 that such an error was reasonably calculated to cause and probably did cause the return of a verdict which would not otherwise have been returned by the jury.

 Thirdly, the appellant complains of the allowance of appellee's witness Weldon Cumming's testimony to the effect that the State Highway Department inspected the construction job for flares, barricades, and signs and found the same sufficient. An examination of the testimony in question reveals that Cumming, a supervisory employee of the appellee, testified that in connection with the placing of warning signs and barricades he had supervision from the Highway Department, that the Highway Department had inspectors who made inspections (including inspections with reference to barricades, flares and signs) daily, and likewise had a resident engineer who on the particular job of widening Highway 183 made such character of inspections, and further that neither the engineer nor any of the inspectors on the job ever called attention with reference to the Merritt Street intersection,—nor had the State Highway Department, prior to the time of the fatal accident. To this testimony the appellant objected upon the trial, but her objection was a general objection only. The matters testified about appear to embrace custom and usage generally followed as to similar construction, and in particular as to the job in question. While it is true that a reasonable conclusion which might be made from the testimony would be that the Highway Department employees deemed the barricade, flares and signs at the Merritt Street intersection to have been sufficient at the time in question, even

though there was no direct evidence that the particular intersection was actually inspected at any particular time proximate to the time of the fatal accident or at a time prior to such accident and at which the actual condition which did exist on the night in question likewise existed, the testimony was certainly not such as constituted it patently improper for any purpose. Only in such cases does a general objection suffice. This being the case, the assignment of error because thereof is insufficiently supported by a general objection and we cannot say that the trial court abused its discretion in allowing the form of inquiry resorted to by appellee's counsel and the testimony elicited from its witness. Mc-Cormick and Ray, Texas Law of Evidence, sec. 16; Wigmore on Evidence, Third Edition, sec. 18.

The judgment of the trial court is affirmed.

## On Motion for Rehearing.

BOYD, Justice (dissenting).

I was almost persuaded to dissent on original submission. Further consideration has confirmed my belief that the jury's answer to issue No. 34 conflicts with the answers to Nos. 37, 40, 43, 56 and 59.

In answering issues submitted, the jury failed to find that deceased was negligent in driving around the flares and barricade at the Merritt Street intersection, and failed to find that he did not heed the warning signs, flares and barricade at that intersection. It seems that an answer that he was negligent in not driving on the old portion of the highway is for all practical purposes tantamount to a finding that he was negligent in driving around the flares and barricade and that he failed to heed the warning signs, flares and barricade. In other words, it appears to me that the jury found in effect that deceased was and was not negligent in not traveling on the old portion of the highway, and that he was and was not negligent in traveling on the new portion.

But if there be no conflict, I cannot escape the conclusion that issue No. 34 amounts to a general submission, the answer to which could not prevail over answers to issues as to specific grounds of negligence. City of Fort Worth v. Lee, Tex.Civ.App., 182 S.W.2d 831, affirmed 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125. I think the motion for rehearing should be granted and the cause remanded.